WILSON H. STUBBINGS

*v.*

THE VILLAGE OF EVANSTON.

*Filed at Ottawa January 22, 1891.*

1. LANDLORD AND TENANT—*eviction of tenant—under paramount title —effect upon liability to pay rent.* The eviction of a lessee from the demised premises under a paramount title will discharge him from the payment of any rent which may fall due, by the terms and conditions of the lease, after such eviction.

2. SAME—*taking land for public use—not an eviction—as affecting the payment of rent.* A tenant, when a part of the leased premises is taken under the power of eminent domain for the use of the public, can not, as against his landlord, claim an eviction, and be released from the payment of rent.

3. As the tenant's liability for the payment of rent continues after a part of his term has been taken by the exercise of the right of eminent domain, and appropriated to the public use, he will be entitled to recover such damages as he sustains by the taking of his leased property by the public.

4. The lessee takes and holds his term in the same manner as any other owner of real property holds his title, subject to the right of the public to take a part or the whole of it for public use, at such time as the public necessity may require, upon the payment of just compensation.

5. SAME—*insolvency of tenant—remedy of landlord to intercept damages awarded to the tenant—under Eminent Domain act.* If the landlord's remedy to collect his rents will be impaired or defeated on account of the insolvency of the tenant, or otherwise, a court of equity may interfere to prevent the payment of the damages recovered in a proceeding for condemnation under the Eminent Domain act, into the hands of the tenant, and appropriate so much of the fund as may be necessary to the payment of the rents due or to become due, to the landlord, during the time the lease has to run.

6. NEW TRIAL—*as to a part of several defendants—in a condemnation proceeding.* In a proceeding to condemn land for public use, in which the owner of the property and his lessee are made parties defendant, and the jury return separate findings, giving to the landlord one sum and to the tenant another sum, though the case was tried as one suit, the court may grant a new trial as to one defendant and refuse it as to the other.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Messrs. HOYNE, FOLLANSBEE & O'CONNOR, and Mr. ROBERT H. PATTON, for the appellant:

If the tenant be evicted by a stranger, by a paramount title, of a part of the premises, the rent will be apportioned, and the eviction be a bar *pro tanto.* 1 Rolles' Abridgment, 236; 3 Kent's Com. 464; 1 Washburn on Real Prop. (5th ed.) 558; Taylor on Landlord and Tenant, p. 459, sec. 386; 2 Platt on Leases, 131; Gilbert on Rents, 30; Woodfall on Landlord and Tenant, 365.

If a part of the land leased is taken under a proceeding of eminent domain, the tenant is entitled to an abatement or apportionment of the rent. Wood on Landlord and Tenant, 794, note 3, on p. 793; 1 Taylor on Landlord and Tenant, (8th ed.) p. 495, sec. 386; Mills on Eminent Domain, sec. 68; Redman & Lyon on Landlord and Tenant, 146; *Kingsland* v.

*Clark,* 24 Mo. 24; *Biddle* v. *Hussman,* 23 id. 597; *Bayley* v. *Lawrence,* 1 Bay, 499; *Dyer* v. *Wightman,* 66 Pa. St. 427; *Cuthbert* v. *Kuhn,* 3 Whart. 356; *Leiter* v. *Pike,* 127 Ill. 287; *Voegtly* v. *Railway Co.* 2 Grant, 243; *Barclay* v. *Pickles,* 38 Mo. 143.

Where land occupied by a tenant under a lease is taken by eminent domain, compensation is to be made to the tenant on the basis of the market value of the lease at the stipulated rent. Mills on Eminent Domain, sec. 68; *Railroad Co.* v. *Davis,* 2 Casey, 248; *Dyer* v. *Wightman,* 66 Pa. St. 427; *Edwards* v. *Boston,* 108 Mass. 540; *Railroad Co.* v. *Becker,* 126 Ill. 436.

It was error to award a new and separate trial to the respondent, O'Leary, and sustain the verdict and enter judgment against appellant. A new trial, if granted to one of the defendants, should be granted to all. *Cochran* v. *Ammon,* 16 Ill. 317; *Barrington's case,* 3 Salk. 362; *Parker* v. *Goodwin,* 2 Strange, 813; *Sawyer* v. *Merrill,* 10 Pick. 16.

Mr. GEORGE S. BAKER, for the appellee:

The taking of the property by eminent domain is not a breach of the covenants of the lease, and does not release the tenant from the payment of rent. *Chicago* v. *Garrity,* 7 Ill. App. 474; *Parks* v. *Boston,* 15 Pick. 198; *Ellis* v. *Welch,* 6 Mass. 246; *Workman* v. *Mifflin,* 30 Pa. St. 362; *Peek* v. *Jones,* 70 id. 85; *Dyer* v. *Wightman,* 66 id. 427; *Frost* v. *Ernest,* 4 Whart. 86; *Foltz* v. *Huntley,* 7 Wend. 210; *Foote* v. *Cincinnati,* 11 Ohio, 408; *Wagner* v. *White,* 4 H. & J. 564; *Schilling* v. *Holmes,* 23 Cal. 230.

It rested in the discretion of the trial court to award the respondent, O'Leary, a new trial, and sustain the verdict and judgment against the appellant. Rev. Stat. chap. 24, art. 9, sec. 7; *Bowman* v. *Railway Co.* 102 Ill. 465.

The lease from Foster to O'Leary was properly introduced in evidence for other purposes than that of showing that ap-

pellant was bound to maintain a certain depth of water.    It
was the best evidence of the terms of O'Leary's tenancy, and
was properly introduced to show his interest.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a proceeding brought by the village of Evanston
to condemn certain property owned by appellant, Wilson H.
Stubbings, for the purpose of extending the lake shore drive.
Appellant's property was located on the lake shore and north
of Dempster street, extending from the lake shore along the
north side of Dempster street four hundred and eleven feet,
and being one hundred and ninety-two feet deep north of
Dempster street.    Under the petition the village sought to
condemn a piece of land one hundred feet wide, northwesterly
through the property.    Appellant's property was leased to one
David O'Leary, who used the property for a coal-yard and a
place for landing coal.    The lease does not expire until 1898.
The appellant and O'Leary were made parties to the proceed-
ing.    Both filed a cross-petition, appellant claiming damages
to the property not taken, and O'Leary claiming damages to.
his interest in the part not taken.    As a result of the trial the
jury returned a verdict in favor of appellant for $5450, as
damages for the property taken, and that he was entitled to
no damages as to property not taken.    The jury also returned
a verdict in favor of O'Leary for $3000, for damages to his
leasehold interest in property taken, but that he was entitled
to nothing as to property not taken.    Appellant and O'Leary
both applied for a new trial.    The application of the former
was denied, but that of the latter allowed.

On the trial of the cause the court refused to instruct the
jury, that if the strip of land and buildings in question are
taken for the purpose of the driveway, the rental to be paid
by O'Leary under his lease will be abated to the extent of the
fair rental value of the lands so taken,—that the value of

O'Leary's leasehold estate in the premises was a sum equal to the difference, if any, between a fair rental value of the demised premises for the balance of his term, and the amount of rent which he would have to pay therefor under his existing lease thereon.    But, on the other hand, the court gave to the jury an instruction as follows:

"When the owner of property makes a lease to a tenant, he conveys an estate in the property known as a leasehold estate, and such estate is in law entirely separate and distinct from the estate that the landlord retains.    In case part of the property is taken under such proceedings as these, the tenant remains bound to pay rent for the whole, according to the terms of the lease.    In this case the petitioner must pay to the landlord an amount equal to the value of his estate in the strip of property taken, and an amount equal to whatever damage, if any, is done to his estate or interest in the remainder; and the petitioner must also pay to the tenant an amount equal to the value of the tenant's estate in the strip taken, and an amount equal to whatever damage, if any, is done to the tenant's estate or interest in the portion of the property not taken."

The ruling of the court on the instructions is relied upon as error.    Indeed, the ruling in this regard is the principal question presented by the record.

The general rule no doubt is, that eviction of the lessee from the premises by a paramount title will discharge him from the payment of any rent which may fall due, by the terms and conditions of the lease, after eviction.    But where a part of leased premises may be taken under the power of eminent domain, can such a taking be regarded as an eviction?    Washburn, (1 Real Prop. p. 342,) in speaking on this subject, says: "It has sometimes been attempted to apply the principle of eviction from a part of the premises, where lands under lease have been appropriated to public use under the exercise of eminent domain.    *    *    *    But the better rule, and one believed to be adopted in most of the States, is, that such a

taking operates, so far as the lessee is concerned, upon his interest as property, for which the public are to make him compensation, and does not affect his liability to pay rent for the entire estate, according to the terms of his lease,—and this extends to ground rent. Such taking does not abate any part of the rent due."

*Parks* v. *City of Boston*, 15 Pick. 198, is an interesting case on the question. It was there held: "Where part of a lot of land under lease is taken by the mayor and aldermen of Boston, for the purpose of widening a street, the lease is not thereby extinguished, nor is the lessee discharged from his liability to pay the reserved rent during the residue of the term, but the lessor and lessee are each entitled to recover compensation for the damage so sustained by them, respectively." The same principle was announced in an earlier case, *Ellis* v. *Welch*, 6 Mass. 246, and in a later case, *Patterson* v. *City of Boston*, 20 Pick. 159.

In *Foote* v. *City of Cincinnati*, 11 Ohio, 408, where the leased premises had been appropriated for a street, the Supreme Court held that the lessee was not relieved from the payment of rent, but he was entitled to recover from the city for the damages sustained. See, also, the following cases, where the same principle is announced: *Workman* v. *Mifflin*, 30 Pa. St. 362; *Frost* v. *Ernest*, 4 Whart. 86; *Garrity* v. *City of Chicago*, 7 Bradw. 474.

Under the authorities it seems that a tenant, where a portion of the leased premises is taken, under the power of eminent domain, for the use of the public, can not, as against his landlord, claim an eviction, and be released from the payment of rent, and as his liability for the payment of rent continues after a part of his term has been taken by the public and appropriated to public use, he would be entitled to recover such damages as he sustained by the taking of his leased property by the public. In other words, the lessee takes and holds his term in the same manner as any other owner of real property

holds his title, subject to the right of the public to take a part or the whole of it for public use, at such time as the public necessity may require, upon the payment of just compensation.

In a proceeding to condemn lands for a public purpose, it is not some particular interest which the public seek to take, but the land itself. If A has one estate in the land and B another, in the proceeding to condemn each is entitled to compensation for the land taken, as his interest may appear in the property; and, as said before, if one has a leasehold interest, he may recover damages for such interest and still be held liable for the payment of rent, as that liability existed before the leasehold interest was taken for public use. A different rule has been adopted in some States, particularly in Missouri. (*Biddle* v. *Hussman*, 23 Mo. 597; *Barclay* v. *Pickles*, 38 id. 143.) In those cases it was held, that as to the part of the leased premises appropriated to public use the rent was extinguished, and no liability existed against the lessee for such rents. But we think that the weight of authority is the other way, and we are not disposed to adopt a rule of that character.

It is, however, contended, if the tenant is allowed to recover for the full value of the leasehold interest, and the landlord is compelled to rely upon the personal obligation of the tenant for the payment of rent, a rule of this character would in many cases result in great loss to the landlord. In a proceeding to condemn a part of leased premises, the rule which we have adopted fixes the relative amount of damages to be recovered by each party interested in the premises; and if a case should arise where, upon the payment of the value of the leasehold interest to the tenant, the remedy of the landlord to collect his rent might be impaired or defeated on account of the insolvency of the tenant, or other cause, a court of equity might interpose to prevent the payment of the damages recovered into the hands of the tenant, and appropriate the fund, or so much thereof as might be necessary, to the payment of the rents due or to become due from the tenant to the landlord

during such time as the lease might, by its terms, continue to run. What rule should be adopted in case the entire tract or lot of land embraced in a lease should be taken, presents a question which does not arise on this record, and it will not be necessary to express an opinion upon it.

It is also claimed that the court erred in granting O'Leary a new trial and refusing appellant a new trial. This is predicated on the position that the two could not have separate trials, but the court was bound to try the case of O'Leary and appellant as one cause. In a proceeding like this, to condemn lands for a public purpose, while all persons made parties to the petition are usually treated as one defendant, and the interests of all are tried and disposed of in one case, yet cases may arise where the court may award separate trials, as held in *Bowman* v. *Venice and Carondelet Ry. Co.* 102 Ill. 464. Here the rights and interests of O'Leary and appellant were tried together as one cause, but there were separate verdicts as to each. The verdict in favor of appellant the court thought was right, while the other verdict—in favor of O'Leary—the court thought was wrong. Under such circumstances the court could do nothing but grant a new trial in favor of O'Leary, and refuse it as to appellant.

It is also claimed that the verdict was contrary to the evidence. The evidence was conflicting, and it was for the jury to determine, from all the evidence, the amount appellant was entitled to recover. This they did, and after an examination of the evidence we are not prepared to say that the verdict is contrary to the preponderance of the evidence.

Some other questions of minor importance, in regard to the admission of evidence, have been raised, but we perceive no objection to the ruling of the court in this regard.

The judgment of the county court will be affirmed.

*Judgment affirmed.*