THOMAS CORRIGAN *et al.*

*v.*

CITY OF CHICAGO *et al.*

*Filed at Ottawa, March* 31, 1893.

1. LANDLORD AND TENANT — *title divested by the power of eminent domain — eviction of tenant.* A tenant, as the owner of an estate for years, is guaranteed just compensation before his title can be divested under the power of eminent domain. He takes the term as any other interest in land is taken, subject to the exercise of that power. If he suffer loss, or is deprived of his estate, he is provided with the same remedy that is given to all other owners, and holds his title subject to this right the same as his landlord holds his title. Hence, it has been held that a taking under the power of eminent domain is not a breach of the covenant for quiet enjoyment, and does not technically amount to an eviction.

2. While a condemnation proceeding may not amount to a technical eviction, yet when the entire tract of land or lot is taken, its effect is to abrogate the relation of landlord and tenant. Whatever title the ten-

ant, as well as the landlord, has in the land passes to the State or corporation in whose behalf the right of eminent domain is exercised. The effect is an absolute extinguishment of the right and title of both in or control over the subject of the demise. It is in effect eviction by paramount right, coupled with a conveyance by the owners of their respective interests.

3. Same — *and herein of the liability of the tenant to pay rent.* When the title of both the landlord and tenant is extinguished in the whole estate demised during the term by condemnation for the public use, the liability of the tenant to pay rent also ceases, and in any action brought by the landlord for the rent accrued after the termination of his estate, the tenant may plead such termination in defense.

4. When a portion of leased premises is taken for the public use and a part remains which is susceptible of occupation under the lease, the covenants of the lease are not abrogated, and the tenant will be bound to payment according to the terms of the covenants in the lease. The lessee will not be entitled to apportionment or abatement of the rent for the part of the land taken, but is bound to pay rent for the whole of the premises demised.

5. Same — *tenant denying title of landlord — extinguishment of title during the term.* The doctrine is well settled, that although the lessee can not show that his lessor had no title to the premises when the tenancy began, he may show that he had a limited estate only, which is determined by its own limitation before the cause of action accrued, as when he held the estate for the life of another, or the like, which expired during the term, or that he has sold and conveyed the land, or has been evicted by title paramount, or that his title has been sold under execution and conveyed. This rule applies whether the action be for the recovery of the premises or for rent accrued after the extinguishment of the landlord's title.

6. Eminent domain — *condemnation of leased land — value of respective interests of landlord and tenant.* The interest of the lessor in premises leased is the value of his reversion and the rents; that is, the reversion with the rents added. The interest of the lessee in the premises is the value of his term, subject to the rents, and each should receive compensation accordingly. Upon the judgment of condemnation being entered, the money awarded will stand in lieu of the land taken or damaged, to be apportioned upon the several interests in the property.

7. Where the entire leasehold interest of the lessee is taken under the power of eminent domain, his compensation is the value of the leasehold estate, subject to the rent covenanted to be paid. If the value exceeds the rental, he will be entitled to recover the excess. If it does not exceed the rent, he will be entitled to nothing.

8. If the covenant to pay rent is not affected by judgment of condemnation, the lessor will be entitled, as compensation, only to the

present value of his reversion which he holds subject to the term created by his lease, and the lessee continuing personally liable, but losing his estate and right to its enjoyment, will be entitled to receive not merely the value of the term, but also a sum of money equivalent to the present value of the sum of the rents *in futuro;* that is, he should receive the value of his term subject to the rent, and such further sum as would be considered a present equivalent for the rent thereafter to be paid.

9. SAME — *and herein of tenant's interest in buildings.* Where the lessee covenants with the lessor not to remove any buildings or other improvements from the premises without the written consent of the lessor, and that at the termination of the lease he will deliver all the buildings and improvements, placed thereon, to the lessor, in good condition, etc., on a proceeding to condemn the leased premises, the lessee or holder of the leasehold will not be entitled to receive as part compensation the value of such buildings in addition to the fair cash value of the leasehold interest.

10. Where a lease for a term of years provides that the buildings and other improvements made by the tenant shall not be removed, but shall be delivered to the lessor at the expiration of the term in good repair and condition, usual wear and inevitable accident alone excepted, the right of the lessees in such buildings will not extend beyond the use of the same during the term, and the lessor takes a present estate in such buildings, subject to the user by the tenants during the term.

APPEAL from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

An ordinance of the city of Chicago was duly passed, ordering the widening of Congress street from State street to Michigan avenue in said city and that the north thirty-four feet of sublot one, lot two, block two, in fractional section fifteen addition to Chicago, and other property be condemned therefor. Appellants owned the north forty feet of the west eighty-seven and eight-tenths feet of the east one hundred and thirty-eight feet of said sublot one. Appellee, Emma Brinkworth, on the 31st day of May, 1888, became the lessee of appellants for the north twenty feet of said tract for a term ending the 30th day of April, 1914, at an annual rental for the first year of $960, payable in installments of $80 per month; if, however, any portion of the building to be erected on said premises was ready for occupancy before the expiration of said year, the rent

was to be increased to $175 per month from the time the building was so ready, and for the next succeeding ten years, that is from April 30, 1889, to April 30, 1899, $2100 per annum, payable in monthly installments of $175; and it was stipulated that for the purpose of fixing the amount of rent to be paid for the ten years from April 30, 1899, to April 30, 1909, an appraisement by parties indifferently chosen, etc., should be made after the month of February, 1899, without the buildings, and· six per cent thereon should be the yearly rent for said period. And in like manner appraisement should be made after February, 1809, and six per cent thereon should be the yearly rental of the residue of the term.  Specific covenants, in respect of such appraisements, are included in said lease but need not be mentioned here.  The lessee to pay taxes in excess of $78 until 1899, and for that year and thenceforward all taxes. The buildings and improvements to become the property of the lessors upon the termination of the lease.  It is expressly covenanted, that upon the termination of the lease all buildings, improvements and fixtures·that may have been placed on the demised premises shall be delivered to the lessors in good condition, ordinary wear and .tear and inevitable accident excepted ; and further, that the lessee will not remove any buildings or other improvements from said premises without the written consent of the lessors.  Lien is declared upon the buildings and improvements on said premises, etc.

Appellee, McCarty, on the same day, May 31, 1888, leased of appellants the south twenty feet of said forty-foot tract, for a term ending April 30, 1914, and covenanted and agreed to pay for the first year $600, in monthly installments of $50 each; if, however, the building to be erected on said premises was ready before the expiration of the year, the increase of rent to $125 a month from the time it was ready for occupancy, and for the next ten years of said term, that is from April 30, 1889, to April 30, 1899, the sum of $1500 per annum, in equal monthly installments, and with like provisions as in the Brinkworth

lease for fixing the rent to be paid for the ten years beginning April, 1899, and ending April 30, 1909, and also for the five years from April 30, 1909, to April 30, 1914, with like provisions in respect of taxes, except that the lessee was to pay the taxes for the years 1888 and 1889 in excess of $222. The lease is in other respects the same as the Brinkworth lease, with like agreements and covenants to deliver the premises in good repair to the lessors at the end of the term.

Just compensation for the thirty-four feet of the property taken was found by the verdict of the jury to be $102,000, and the same was awarded to appellants, less the value of said leasehold estates, which was found to be $30,225.79, and the value of improvements on said premises, $4527.75. Of said sum allowed as the value of the leasehold estates, there was awarded to Emma Brinkworth, as owner thereof, in the north twenty feet of said thirty-four feet taken, $17,631.71, and for the value of her improvements thereon, $2327.75, and to said McCarty, as owner of the leasehold estate of the south twenty feet, as the value of his leasehold estate, $12,594.08, and for his improvements on the same, $2200.

Motion for new trial having been overruled, the court found "that the respective sums of money awarded by the jury, in and by their said verdict, to the owners of said lots, pieces and parcels of land and property, are, and each of them is, a just compensation to the owner or owners thereof for the taking and damaging" of the same by the proposed improvement. "And said owner or owners shall, respectively, accept from said city of Chicago such sum or sums as are so awarded on account of the lots, pieces and parcels of land and property so owned by him, her or them respectively. * * * And that upon payment into this court by the said city of the said several sums of money for the use of the owner or owners of any or each of the said lots, pieces and parcels of land and property, or upon proof made to or before the court that the said sums of money, or any of them, have been paid to the

owner or owners respectively of said lots, pieces and parcels of
land and property, the city of Chicago shall have the right, at
any time thereafter, to take possession," etc., of said property,
in respect of which "such compensation shall have been so
paid or deposited." The fee owners alone appeal and assign
for error that the court erred in overruling their motion for
a new trial, and in entering judgment; *second,* that the court
erred in giving each instruction in behalf of respondent, Wil-
liam McCarty; *third,* that the court erred in giving instruc-
tions in behalf of Emma Brinkworth.

Messrs. WARVILLE, WALSH & MADDEN, for the appellants.

Mr. EDWIN BURRITT SMITH and Mr. SOLON D. WILSON, for
the appellee McCarty.

Mr. JUSTICE SHOPE delivered the opinion of the Court :

No objection is made, or urged, to the finding of the amount
to be paid by the city as just compensation for the land taken,
nor to the entry of judgment therefor, or in authorizing the
entry of the city into the thirty-four feet strip condemned,
upon payment of that sum. The verdicts and judgments are
to be regarded as separate and distinct. *Stubbings* v. *Evanston,*
136 Ill. 37. The controversy here, so far as made by counsel,
and insisted upon in this court, relates solely to the distribu-
tion of the sum found to be just compensation between the
owners of the leasehold estates and the fee owners. The
judgment of condemnation, and fixing the compensation to be
paid by the city, will be affirmed; so, there remains open for
consideration the judgments distributing the compensation be-
tween and among the parties holding the several estates in the
premises only.

The lease to the defendant, Emma Brinkworth, expires
April 30, 1914, and was upon a fixed annual rental until April
30, 1899, and after that the rental was to be fixed by appraise-

ment of the land.  The whole of the property included in her
lease was taken by the city.  The court instructed the jury, at
her instance, " that the taking of property held by a tenant,
under a lease existing at the time of filing the petition to
condemn, does not release the tenant from the payment of
rent, or any part thereof."  That " the leasing of real estate
to a tenant for a term of years is a conveyance to him of an
interest in the land ; and if the premises, or any part thereof,
be taken by such a proceeding as this, the tenant is entitled to
compensation for the damages, if any, to his leasehold estate,
in respect of the unexpired part of the term."  And further,
that the taking of the leasehold premises of said Brinkworth
does not release her from the obligation to pay the full amount
of rent required by the lease, etc.

The correctness of these instructions is challenged.

That the tenant, as the owner of an estate for years, is
guaranteed just compensation before his title can be divested
under the power of eminent domain, is not questioned.  The
lessee takes the term as every other interest in land is taken,
subject to the exercise of that power, whenever the public
necessity and convenience demand it.  He holds and enjoys
the estate granted, subject to the exercise of the sovereign
power to appropriate his land to a public use, upon making to
him just compensation ; and if he suffers loss, or is deprived
of his estate, he is provided with the same remedy that is
given to all other owners, and holds his title subject to this
right, as his landlord holds his title.  Hence, it has been held
that a taking under the right of eminent domain is not a breach
of the covenant for quiet enjoyment, and does not technically
amount to an eviction.  *Folts* v. *Huntley,* 7 Wend. 211; *Parks*
v. *City of Boston,* 15 Pick. 193; *Foote* v. *City of Cincinnati,*
11 Ohio, 408 ; *Patterson* v. *Boston,* 20 Pick. 159 ; *Dyer* v.
*Wightman,* 66 Pa. St. 245; *Frost* v. *Earnest,* 4 Whart. 90 ;
*Ross* v. *Dysart,* 9 Casey, 452; *S. & D. Ry. Co.* v. *Schmede,*
7 P. F. Smith, 271.

And when a portion only of the land is taken, and a portion remains, which is susceptible of occupation under the lease, we have held, following what we regard as the weight of authority, that the covenants of the lease are not abrogated, and that the tenant is bound by his covenant to pay full rent according to its terms. *Stubbings* v. *Village of Evanston*, 136 Ill. 37. And that in such case the lessee would not be entitled to apportionment or an abatement of the rent for the part of the land taken, but was bound to pay rent for the whole of the premises demised. In that case we refrained from expressing any opinion in respect of the rule governing in cases where the entire tract, or lot of land embraced in the lease, is taken for the public use. That question is now presented to this court for the first time.

If the covenant to pay rent is not affected by the proceedings and judgment of condemnation, it is clear that the lessor would be entitled as compensation only to the present value of his reversion, which he holds subject to the term created by the lease; and the lessee continuing personally liable but losing his estate, and right to its enjoyment, would be entitled to receive not merely the value of the term, but also a sum of money equivalent to the present value of the sum of the rents payable *in futuro.* That is, he should receive the value of his term subject to the rent, and such further sum as would be considered a present equivalent for the rent thereafter to be paid, and the lessor would receive correspondingly less. The cases thus holding proceed upon the theory that the condemnation of the land leaves the lease in full force, at least in so far as there are covenants to pay rent. We think, that while the condemnation proceeding may not amount to a technical eviction, that where the entire tract of land, or lot, is taken, the effect is to abrogate the relation of landlord and tenant. By virtue of such proceeding, whatever title the tenant has in the land passes to the State, or corporation, in whose behalf the right of eminent domain is exercised; and precisely the same

is true of the landlord's estate or interest. The effect is an absolute extinguishment of the right and title of both in, or control over, the subject of the demise. It is in effect eviction by paramount right, and has all the force of an eviction by a paramount title, coupled with a conveyance by the owners of their respective interests. If the lessee should be held in such case entitled to receive compensation growing out of his liability to pay rent for the remainder of the term, after the extinguishment of his title, it will not be contended that the measure of such compensation would be the gross rents. It is clear that if the lease have fifty years to run at an annual rental of a thousand dollars, that an annual interest of two per cent upon the gross sum of the rents would discharge the installments as they fell due, and leave the tenant the gross sum of $50,000 profit at the expiration of the term. To this he would not be entitled; he is to receive compensation only. Compensation would be made by the payment to him of a sum, the present equivalent of the sum of the rents payable during the term, with a proper discount in payment. If this be so, the effect is simply to take the money which really belongs to the lessor, pay it over to the lessee, that he may pay it back to the lessor in installments, and this is to be done without profit to either, and under a lease which, for all other purposes, has been absolutely extinguished.

We are of opinion that reason and the weight of authority are opposed to the establishment of such a rule. The interest of the lessor in the premises, is the value of his reversion, and the rents; that is, the reversion with the rents added. The interest of the lessee in the premises, is the value of his term, subject to the rents, and each is to receive compensation accordingly. Upon the judgment of condemnation being entered, the money awarded would stand in lieu of the land taken, or damaged, and to be apportioned upon the several interests in the property.

We are referred to a single case only (*Foote* v. *City of Cincinnati,* 11 Ohio, 408) where it has been held, that the tenant's

liability to pay rent to his landlord continues unimpaired, after condemnation of the entire tract of land included in the lease, or where so much thereof has been appropriated, that the residue was incapable of occupation for any purpose consistent with the lease, and that case is placed upon the principle that the right of eminent domain, or the right of appropriating land to public uses, is not a technical incumbrance on the land, and that such appropriation is not an eviction; and the only cases cited in support of the decision are, *Folts* v. *Huntley*, 7 Wend. 211; and *Parks* v. *City of Boston*, 15 Pick. 198, in each of which cases, the demised premises were only partially taken, and the tenant remained in possession of the residue under his lease.

In *O'Brien* v. *Ball*, 119 Mass. 28, where the city of Boston, under an act authorizing it, acquired the title to a tract of land which had been leased by O'Brien to Ball, and the title of the lessor had been divested in the whole tract, the lessor brought suit against the lessee for rent accruing after divestiture of his title. The court held the lessor not entitled to recover and say: "But, even without eviction by, or attornment to, the holder of the new title, the liability to pay the rent reserved, ceased with the termination of the plaintiff's estate."

*Barclay* v. *Pickels*, 38 Mo. 143, was an action by the lessor to recover rent reserved in a written lease. The defendant offered to prove, that after the making of the lease, and before the rent sued for accrued, the city of St. Louis had, in a proceeding instituted in the opening of Choteau avenue, in said city, etc., taken the leased property for the opening of said street, and that the title to the property had thereby become vested in the city, etc., which was rejected. The court held the testimony admissible and say: "As a general rule, whenever the estate which the lessor had at the time of making the lease is defeated or determined, the lease is extinguished with it. If, therefore, a lot of land, or other premises, under lease, is required to be taken for city, or other public improvements, the

lease, upon confirmation of the report of the commissioners condemning the property, becomes void. When the lessor ceases to have any interest in the property, the rent becomes annihilated." Citing Taylor's Landlord and Tenant, sec. 519. See *S. & D. Ry. Co.* v. *Schmede, supra; Carthburt* v. *Keehn,* 3 Whart. 357.

In these cases, the discharge of the lessee from liability is placed upon the ground that the landlord's title is absolutely extinguished in the leased estate, and he can not, therefore, enforce the contract for the payment of rent after its extinguishment. "The tenant's covenant is only to pay a certain sum as rent," says GRAY, C. J., in *Sampson* v. *Clarkson*, 113 Mass. 348 ; "and, in the words of DODRIDGE, in 3 Bulst. 274, 'if it be so that the estate be ended, the contract for the rent will end also, this being but *quid pro quo, sic,* the rent of the land.'" The doctrine is well established, that although the lessee can not show that his lessor had no title to the premises when the tenancy began, he may show that he had a limited estate only, which was determined by its own limitation before the cause of action accrued, as where he held the estate for the life of another, or the like, which expired during the term (*Sampson* v. *Clarkson, supra; Wells* v. *Mason*, 4 Seam. 84; *St. John* v. *Quitzow*, 72 Ill. 334) ; or that he had sold and conveyed the land, or has been evicted by title paramount, or that his title has been sold under execution and conveyed. *Franklin* v. *Palmer*, 50 Ill. 202 ; *Supervisors* v. *Herrington*, id. 232; *Tilghman* v. *Little*, 13 id. 239 ; Taylor's Landlord and Tenant (8th ed.), sec. 708, and notes.

This rule applies whether the action be for the recovery of the premises, or for rent accrued after the extinguishment of the landlord's title, (Taylor's Landlord and Tenant, sec. 627–708, and cases cited); and whether the estoppel sought to be set up arises *in pais*, or by deed. The estoppel *in pais* arises, if at all, because of the tenant's having entered under the title at the beginning of the lease. This he admits. But it is not

inconsistent therewith to plead and prove that such title has subsequently expired.

And so where the estoppel is by deed, " the rule is well settled that a tenant is not allowed to dispute his landlord's title after having accepted possession under him: A lessee by indenture is technically estopped from denying it; and this, if not the origin of the rule, seems to have been the only occasion of its occurrence under the early common law. But it is now of general application, whenever possession has been taken under any species of tenancy, whether the action be assumpsit, debt, covenant, or ejectment. A lessee may, however, plead that, although the lessor had an interest in the premises at the time of making the lease, his interest terminated before the alleged cause of action arose." Taylor's Landlord and Tenant, sec. 629 and sec. 708, notes 3, 4, 5 and 6; *Langford* v. *Selmes*, 3 Kay & J. 220; *Salaman* v. *Agburow*, 1 Ral. R. 441; 3 Bulst. 272–5 ; *Den* v. *Ashmore*, 2 Zab. 261; *Presstman* v. *Silljacks*, 52 Md. 647 ; *Hardin* v. *Forsythe*, 99 Ill. 312. And the rule applies whether there has been an eviction in fact, or the tenant has attorned in good faith to the owner of the paramount title or not. It would seem, therefore, that where the title of the landlord is extinguished in the whole estate during the term, the liability of the tenant to pay rent also ceases; and that in any action brought by the landlord for the rent accrued after the termination of his estate, the tenant may plead such termination in defense.

We are of opinion that the better rule is, that where the estate of the landlord, in the whole of the demised premises, as well as that of the tenant, is extinguished by the condemnation proceedings, the liability of the tenant to pay rent ceases upon the termination of such estates.

It follows that the court erred in giving the instructions before quoted. The measure of compensation for the estate of the tenant taken is the value of her leasehold estate, subject to the rent covenanted to be paid. If the value exceeds the

rental she will be entitled to recover the excess. If it does not exceed the rent reserved, she will be entitled to nothing.

Like instructions were given at the instance of the defendant McCarty. In his case fourteen feet out of the twenty feet fronting on State street, and extending eighty feet in depth, were taken under the condemnation proceeding. A portion of the lot being six feet front on State street and eighty feet on Congress street, as widened, was not taken. By looking into the record, it is seen that the evidence shows that the part so remaining may be occupied for purposes consistent with the lease, although at a decreased rental value. In such case the rule laid down in *Stubbings* v. *Village of Evanston, supra,* applies. No restatement or discussion of the rule is required. The instructions, in respect of the matter under consideration as applied to the facts shown in McCarty's case, were in accordance with the rule there stated, and were not, therefore, in our opinion, erroneous.

We agree with counsel for defendant McCarty, that the jury could not, in view of the facts proven, have been misled into allowing compensation for the value of the leasehold estate, after the 30th of April, 1899. The evidence very properly was limited to the value of the leasehold estate to that date.

There is, in our judgment, however, an erroneous ruling affecting the judgments in favor of both McCarty and Brinkworth, which will necessitate a reversal of each. By the leases which, in the respect now being considered, are alike, the lessee covenants and agrees not to remove any buildings or other improvement from said premises without the written consent of the lessor, and at the termination of the lease all the buildings, improvements and fixtures that may have been placed and erected on said demised premises shall be delivered to the lessor in good condition, ordinary wear and tear and inevitable accident excepted. By the third instruction, given at the instance of defendant McCarty, the jury were directed that: " The question for you to determine as to such leasehold

interest is, to what extent, if any, shown by the evidence, the tenant is injured or sustains damage by taking a part of the leasehold premises, and it is the duty of the jury to award him the fair cash value of such leasehold interest   *   *   *   including the value of any building belonging to him and situated thereon, as shown by the evidence or by your view, so far as taken or destroyed, deducting only the fair cash value to him for use under the lease of the six feet of said premises remaining."   A like instruction was given on behalf of the defendant Brinkworth, except they were required to determine the damages sustained by the taking of the entire leasehold premises, "including the value of any building belonging to her and situated thereon," etc.   The buildings on the lots at the time of filing the petition for condemnation had been erected by the tenants, severally, under their leases, and as we have seen, were to be delivered to the landlords at the expiration of the leases, with the premises, in good repair and condition, usual wear and tear and inevitable accident only excepted.   The buildings so erected would, under the lease, become fixtures, and the tenant expressly covenanted not to remove from the premises any buildings or improvements placed thereon without the consent of the landlords, which there is no pretense had been given.   It is manifest that the right of the tenants in respect of such buildings consisted only in their use and enjoyment during their respective terms; and that all their right and interest therein ceased at the expiration of the term.   The landlords took a present estate in such buildings and improvements, subject to the user by the tenants during the term.   2 Taylor's Landlord and Tenant, sec. 549 and note 2.   It was error, therefore, to instruct the jury that the tenants, as compensation for their leasehold estates in the land, were entitled to the value of the buildings placed thereon.

That this was prejudicial error, of which appellants here may complain, is clear.   The jury by their verdict found the Brink-

worth leasehold estate for the term, to be of the value of $17,631.71, and found that the value of her improvements on the same was $2327.75; and there was awarded to the defendant McCarty, as owner of his leasehold estate, $12,594.08; and for his improvements thereon $2200. It is clear, we think, that the true measure of the compensation, as their rights and interests are defined and fixed by the leases, was the value of their respective leasehold estates in their condition at the time of the filing of the petition for condemnation, including the use and enjoyment of the buildings and ground, and deducting in the McCarty case the value of the use of the premises not taken, and in the Brinkworth case estimating the value, subject to the rents reserved as before indicated.

For the errors mentioned the judgments in favor of said defendants, Brinkworth and McCarty, are severally reversed and the cause remanded. They to pay the costs of this court in equal parts.

*Judgment reversed.*