# WM. J. H. GLUCK *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Eminent Domain—Condemnation of Part of Leased Property—Measure of Damages of Tenant—Abatement of Rent—Landlord and Tenant—Repairs.*

When there is a leasehold interest in land taken under the power of eminent domain, the lessee is entitled to just compensation for the value of his interest, precisely as the landlord is entitled to compensation for the value of his interest; and the sum of these values must be the full value of the property taken.

A taking of part of demised land by condemnation is not an eviction, and the tenant remains liable, under his covenant, to pay the rent originally reserved, because nothing short of a surrender, a release or an eviction will discharge him from his covenant in this behalf.

Where part only of property subject to a lease is condemned, the condemnation proceedings do not operate to abate any portion of the rent, and since the tenant remains liable to pay the whole rent, he is entitled to compensation for this element of injury.

A landlord is under no obligation to make repairs upon the demised premises, unless he has covenanted so to do.

For the purpose of widening a street, a part of a lot and building was taken under condemnation proceedings; the front wall was torn down, and the removal of the elevator in the building was made necessary. Under the lease, which had upwards of ten years to run, the tenant was bound by a covenant to pay rent, and the landlord was under no obligation to make repairs. In the condemnation proceedings, damages for all injuries to the building had been awarded to the landlord. Upon appeal by the tenant from the award to him, *Held*,

1st. That since the tenant was bound to pay rent, although the premises were made uninhabitable, and was himself obliged to make the repairs if he continued to occupy, he was entitled to be paid the amount necessary for making such repairs.

2nd. That the fact that the full value of the property taken had been paid to the landlord was no answer to the claim of the tenant to compensation.

Appeal from the rulings of Baltimore City Court, on an appeal from the award of the Commissioners for Opening

Streets.   At the trial below, appellant proved that he was tenant of certain property on Gay street under a lease for twenty years, beginning in 1885 ; that a part of such property was condemned by the appellee for the widening of said street, and also offered evidence to show the cost of constructing a new front in said premises, and making the other changes therein rendered necessary by the condemnation.

The appellant offered the following prayers :

*Appellant's 1st Prayer.*—When the owner of property makes a lease to a tenant, he conveys an estate in the property known as a leasehold estate, and such estate in law is entirely separate and distinct from the estate that the landlord retains.   In case part of the property is taken for the widening of Gay street, the tenant remains bound to pay rent for the whole, according to the terms of the lease.   In this case the city must pay to the appellant an amount equal to the value of the tenant's estate in the part taken, and an amount equal to whatever damage is done, if any, to the tenant's estate or interest in the portion of the property not taken.   (Rejected.)

*Appellant's 2nd Prayer.*—If the jury shall find that the appellant is the lessee of the premises No. 222 N. Gay street, under the lease of April 14th, 1885, and shall further find that the elevator mentioned in the evidence will be removed in widening of said street, then the jury are at liberty to allow the appellant the cost of the removal of said elevator and its construction in another part of said premises.   (Rejected.)

*Appellant's 3rd Prayer.*—If the jury find from the evidence that the appellant is the owner of the leasehold interest in the premises No. 222 N. Gay street, created by the lease of 1885, offered in evidence, and if they further find that in the proposed widening of Gay street a portion of the building known as No. 222 N. Gay street will be taken away, then the jury should allow the appellant such a sum as will cover the cost of repairing said building, in its diminished size, and especially of constructing a new

front therein, but nothing shall be allowed for repairs to said building, save such repairs as may be made necessary by such widening of Gay street.   (Rejected.)

The following prayers were offered on behalf of the Mayor and City Council of Baltimore :

*City's 1st Prayer.*—That the appellant, Gluck, is entitled in his appeal from the award of the commissioners of damages for injury to the house No. 222 North Gay street, to recover only such sum, if any, as the fair market value of his lease is impaired by the proposed improvement ; that in estimating the impairment, if any, of the fair market value of his lease, they are to bear in mind that he is entitled to have his rent reduced in the same proportion that the value of his lease is reduced.   (Granted.)

*City's 2nd Prayer.*—That the appellant, Gluck, has no right to recover for injuries done to the building known as 222 North Gay street, such damages belonging to and having been awarded to the landlord.   (Granted.)

*City's 3rd Prayer.*—That in estimating the damages to be awarded to Mr. Gluck, the jury cannot consider either the good-will of his business or his prospective profits thereupon, or any inconvenience or loss arising from the interruption of his business, and can only award him the fair market value of his interest in the property 222 N. Gay street, the property in question, less the fair market value of his interest in so much thereof as will remain after the opening of Gay street, bearing in mind that the rent will be reduced the same proportion that the value of his lease is reduced.   (Granted.)

The Court below (PHELPS, J.), rejected the appellant's prayers and granted those offered by the appellee; to which action of the Court the appellant excepted and took this appeal.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, ROBERTS and PAGE, JJ.

*James B. Guyton* for the appellant.

The appellant contends:   1. That the taking of a portion of leased property in exercise of the power of eminent domain is not an eviction by title paramount and the covenant contained in the lease, to pay the rent, remains unaffected.   An easement only is taken, not the fee.   *Randolph's Law of Eminent Domain,* sections 170 and 304; *Ellis* v. *Welch,* 6 Mass. 246; *Parks* v. *Boston,* 15 Pick. 198; *Folts* v. *Huntley,* 7 Wend. 210; *Dyer* v. *Wightman,* 66 Penn. St. 425; *Stubbins* v. *Village of Evanston,* 136 Ill. 37; *Foote* v. *City of Cincinnati,* 11 Ohio, 408; *Workman* v. *Mifflin,* 30 Penn. St. 362; *Emmes* v. *Feeley,* 132 Mass. 346; *Dobbins* v. *Brown,* 2 Jones, 75; *Kersey* v. *Railroad Co.,* 133 Penn. St. 234; *Railway Co.* v. *Schcike,* 3 Wash. 625; *Edmonds* v. *Boston,* 108 Mass. 535; *Balto. & Ohio R. R. Co.* v. *Thompson,* 10 Md. 86; *Booker* v. *Railway Co.,* 101 Ill. 337.

2. (*a.*) That the landlord is not bound to make any repairs or changes in the building on said premises in order that the same may be as conveniently arranged after, said widening as at the present time; that he is not bound to construct a new front in said premises; that there is nothing upon the face of the award to the landlord to show that he is being paid for the necessary cost of constructing a new front in said building, or constructing a new elevator therein, and that parol evidence will not be admitted to explain the award.   The language of the award to the owners of the reversion is as follows: "To the estate of Samuel Hinds for the fee-simple interest in lot B."   *Turner* v. *Williams,* 10 Wend. 140; *Patterson* v. *Boston,* 20 Pick. 159; *Pattesron* v. *Boston,* 23 Pick. 425.   (*b.*) A covenant is never implied that a landlord will make any repairs. *Moyer* v. *Mitchell,* 53 Md. 176; *Taylor, Landlord and Tenant,* section 329.   (*c.*) And a lessor is entitled to rent although the premises may be destroyed by fire during the term.   *Lamott* v. *Sterett,* 1 H. & J. 29.

3. The Baltimore City Code requires that the damages

caused to appellant's right or interest shall be awarded directly to him, he being the owner of a right or interest in the property taken. His right or interest should not be taken without just compensation. The claim that he will have a remedy in equity against a third party is not sufficient. *City Code*, section 6, Article 48, page 944; *City Code*, section 20, Article 48, page 954; *B. & O. R. R. Co.* v. *Thompson*, 10 Md. 86.

4. That the appellant should not be required to seek his remedy in equity. Equity will not assume jurisdiction in cases in which the remedy at law is plain, adequate and complete. And there is a constitutional right to trial by jury in cases like this. *McCoy* v. *Johnson*, 70 Md. 490.

*Thomas G. Hayes*, City Counsellor, and *William S. Bryan, Jr.*, City Solicitor, for the appellee.

In the case at bar the landlord was allowed the value of the part of the lot taken by the condemnation proceedings for the widening of Gay street, as appears from the awards made by Commissioners for Opening Streets, which by agreement are a part of this record. The tenant, Mr. Gluck, the appellant, was therefore entitled to a proportionate abatement of his rent. The 1st prayer of the appellant, which asks the City Court to instruct the jury that "the tenant remains bound to pay rent for the whole, according to the terms of the lease," is incorrect. *Mayer, Ground Rents in Md.*, 84; *Dyer* v. *Wightman*, 66 Pa.. St., 425; *R. Co.* v. *Scheike*, 3 Wash. St. 625; 29 Pac. Rep. 217; *Biddle* v. *Hussman*, 23 Mo. 597; *Barclay* v. *Picker*, 38 Mo. 143; *Liter* v. *Pike*, 127 Ill. 288; 20 N. E. Rep. 23.

In many jurisdictions, the mere fact that a portion of the land is taken for public use (apart from any consideration of what was allowed to the landlord), works an apportionment of the rent. *Mills on Eminent Domain*, section 69; *Kingsland* v. *Clark*, 24 Missouri, 24; *David* v. *Beelman*, 5 La. Annual, 545; *Gillespie* v. *Thomas*, 15 Wendell, 464;

320    GLUCK vs. M. & C. C. OF BALTO.

Opinion of the Court.                        [81

*Lewis on Eminent Domain*, section 483. The measure of damages, as given in the city's 3d prayer, is fully approved by this Court in *Rice's case*, 73 Md. 308.

McSHERRY, J., delivered the opinion of the Court.

This is a proceeding by the Mayor and City Council of Baltimore to condem, under the right of eminent domain, *part* of a lot of ground and *part* of the building thereon, for the widening of Gay street. The reversionary interest in the property belongs to the estate of Samuel .Hindes, and the leasehold interest is owned by the appellant, Gluck, under a lease executed in 1885, and which expires in 1905. Gluck being dissatisfied with the award of damages made to him, appealed from the return and estimate of the Commissioners for Opening Streets, to the Baltimore City Court, where a trial by jury was had. At the close of the evidence both the city and Gluck asked the Court to instruct the jury as to the measure of damages applicable to the facts before them. The prayers presented by the city were granted, whilst those presented by Gluck were rejected, and from these rulings this appeal was taken. Compensation was made to the estate of Hindes for the fee-simple interest in so much of the lot as is required for widening the street, and the pending controversy relates only to the amount which the lessee is entitled to be paid for his leasehold interest therein. The proposed widening of Gay street will require but a part of the leased lot, and will take a portion of the building standing thereon. This will leave the building not only diminished in size, but without a .front wall, and consequently untenantable. Under the lease, the tenant is bound to pay in monthly instalments the rent reserved, and there is no covenant in the lease binding the landlord to make repairs. .

The owner of the leasehold, and the owner of the reversion, together hold the fee-simple estate. Each has a distinct estate or property. "The interest of a termor, in the eye of the law, is just as potential as that of the owner

of the fee, although in fact it may not practically be so valuable." *B. & O. R. R.* v. *Thompson*, 10 Md. 87. These several interests are both protected by Art. 3, sec. 40 of the State Constitution, from appropriation for public use, unless just compensation, as agreed on between the parties or as awarded by a jury, shall be first paid or tendered to the party entitled to such compensation. Whatever be the method of ascertaining the values of these distinct interests, it is evident that the sum of those values must be the full value of the property taken. *N. Y. & B. Bridge* v. *Clark*, 137 N. Y. 95; *Burt* v. *Ins. Co.*, 115 Mass. 1. As the owner of each separate interest has the constitutional right to be fully compensated before his estate can be lawfully taken for a public use, he is obviously entitled to look, not to some one else for that compensation, but to the agency authorized to make, and which actually does make, the appropriation of his property. He cannot be driven to seek redress from another. Hence, it will be no answer to his demand to say that the value of his interest, or of a part of his interest, has been improvidently awarded to some one else. *Mills on Em. Dom.*, sec. 70. What, then, is the measure or the standard by which the value of so much of the appellant's leasehold interest, as is needed for widening Gay street, is to be ascertained?

Primarily it would be the fair market value of his interest in the entire lot, less the fair market value of his interest in that portion which would remain after the widening of the street has been completed. *Mayor, &c.*, v. *Rice*, 73 Md. 311. This, as a general rule, is *a priori* correct; but the Court in the case last cited was not called on, as it is by the prayers in the case at bar, to designate the particular items which properly go to make up these relative market values. The prayers on both sides in the pending appeal require such an analysis—those of the city by the exclusion, and those of the appellant by the inclusion of alleged constituent factors of damage. The specific inquiry then is, when part of the demised premises is taken,

what circumstances affect the relative market values fixed in the rule above quoted as the standards of comparison, if the tenant is bound by an unconditional covenant to pay rent, and the landlord is under no covenant to repair the buildings injured by the appropriation for the public use? This depends, first, upon whether the tenant still remains liable for the payment of the whole rent, though part of the leased premises has been actually taken by condemnation proceedings; and, secondly, upon whether he is bound to replace the buildings partially removed or damaged, in the absence of a covenant on the part of the lessor to make repairs. These questions are raised by the prayers.

"It is incontrovertible that nothing but a surrender, a release or an eviction can, in whole or in part, absolve the tenant from the obligation of his covenant to pay rent. *Fisher* v. *Milliken*, 8 Barr. 111. Thus, if the premises have been wrongfully entered by a disseisor and the tenant dispossessed for the entire term, or even by the military force of a public enemy, or if they have been destroyed or rendered untenantable by earthquake, lightning, floods or fire, and thus all enjoyment by the tenant entirely lost, yet his covenant remains. *Workman* v. *Miffin*, 6 Casey 369, and cases there cited. It is also equally settled that a taking by the sovereign under the right of eminent domain is not an eviction. *Frost* v. *Earnest*, 4 Whart. 90; *Dobbins* v. *Brown*, 2 Jones, 75; *Ross* v. *Dysart*, 9 Casey, 452; *Schuylkill & Dauphin R. R. Co.* v. *Schmocle*, 7 P. F. Smith, 271;" *Dyer* v. *Wightman*, 66 Pa. St. 427. The case last cited, and from which the above extract is quoted, was a condemnation proceeding in which the *fee-simple* was taken for the construction of a railroad. To the same effect see *Peck* v. *Jones*, 70 Pa. St. 85; *Ellis* v. *Welch*, 6 Mass. 246; *Parks* v. *Boston*, 15 Pick. 198; *Folts* v. *Huntley*, 7 Wend. 210; *Foote* v. *City of Cincinnati*, 11 Ohio St. 408; *Emmes* v. *Feeley*, 132 Mass. 346; *Stubbings* v. *Village of Evanston*, 136 Ill. 37; S. C. 11 L. R. A. 839; *Corrigan* v. *City of Chicago*, 144 Ill. 537; S. C. 21 L. R. A. 212, and copious

notes.   In *Wash. on Real Property*, vol. 1, page 342, the
author says:   "It has sometimes been attempted to apply
the principle of eviction from a part of the premises where
lands under lease have been appropriated to public use under
the exercise of eminent domain.   *   *   *   But the better
rule, and one believed to be adopted in most of the States,
is that such a taking operates, so far as the lessee is con-
cerned, upon his interest as property, for which the public
are to make him compensation, and does not affect his
liability to pay rent for the entire estate, according to the
terms of the lease ; and this extends to ground rents."   In
*Parks* v. *Boston, supra*, it was held :   "Where part of a lot
of land under lease is taken by the Mayor and Aldermen
of Boston for the purpose of widening a street, the lease is
not thereby extinguished, nor is the lessee discharged from
his liability to pay the reserved rent during the residue of
the term, but the lessor and lessee are each entitled to
recover compensation for the damage so sustained by them
respectively."   And in *Foote* v. *City of Cincinnati, supra*,
where the leased premises had been appropriated for a street,
the Supreme Court held that the lessee was not released
from the payment of rent, but that he was entitled to recover
from the city the damages he sustained.   Whilst there are
a few cases, chiefly in Missouri and Louisiana, which hold
a contrary view, the correct doctrine, both upon principle
and by the decided weight of authority, seems to be that a
condemnation of a part of a leasehold estate for a public
use does not at law amount to an eviction ; and whether
the fee or a mere easement be taken, the tenant still remains
liable under his covenant to pay the rent originally reserved,
because nothing short of a surrender, a release or an evic-
tion will discharge him from his covenant in this behalf.
If a condemnation of part of the premises will not discharge
the tenant's covenant to pay rent, neither will it operate to
apportion the rent so as to relieve the tenant of any portion
of his liability to the lessor.   Apportionment of the rent
does not mean abatement of it ; because though rent may

be apportioned, the tenant still remains liable to pay the whole of it, but in different parts to different persons, except where he has purchased or acquired the reversion of part of the demised premises. So the question recurs, not what will apportion, but what will abate the rent? The total destruction of the premises does not discharge the payment of rent, or any part of the rent, and nothing save a release, a surrender or an eviction will. A condemnation by eminent domain of part of the landlord's reversion is not in law an eviction or partial eviction, for an eviction is the act of the landlord or of a third party holding under a paramount title. *Taylor, Land & Ten.*, sec. 381. Neither is it a release, which is the descending of the greater estate upon the less; *Taylor, Land & Ten.*, sec. 507; nor is it a surrender, which is the yielding up of the less estate to him who has the reversion or remainder. *Co. Lit.* 337 *b*. As a consequence, then, a condemnation proceeding cannot of its own vigor on principle operate to abate any portion of the rent, and it therefore follows that notwithstanding an appropriation under the power of eminent domain of a part of the reversion, the tenant remains liable on his covenant to pay rent, precisely as he does when the entire habitable premises have been destroyed by fire. The appropriation of part of the property for a public use, leaves the tenant in the position of being deprived of a part of his property, whilst he still remains liable to pay rent for the whole of it, and to that extent obviously does him an appreciable injury, which should be considered by the jury in estimating the decreased market value of the remaining portion of the demised premises. The first and third instructions given by the Court below at the instance of the city, in terms excluded this element of damage from consideration by the jury, and informed them that the tenant was entitled to have his rent reduced in the same proportion that the value of his lease was diminished. These instructions were therefore erroneous. As the tenant's estate is entirely distinct from the landlord's and as both estates are within the protection of

the Constitution, each must be awarded in money an amount equivalent to the value of that which is taken from him ; and as parts of the premises are taken from the possession of the tenant without thereby releasing him from his covenant to pay the whole rent, in estimating the decreased value of that portion which is left, allowance must necessarily be made for the rent to be paid for that fragment of the originally demised premises of which he is to be deprived, because the obligation of his contract to pay the entire rent is. not, and under settled constitutional guarantees, cannot be impaired or abridged by condemnation proceedings which award him no compensation, or which ignore that obligation as an element of substantial injury. The appellant's first prayer which asserts this principle was therefore correct, and ought to have been granted.

It has, however, been contended that if the tenant should be allowed to recover for the full value of the leasehold interest, and the landlord should be required to rely upon the personal obligation of the tenant for the payment of rent, a rule of this character would or might in many instances result in great loss to the landlord.   At best this is a mere suggestion of a possible hardship.   As said by ROLFE, B., in *Winterbottom v. Wright*, 10 M. & W. 115, "hard cases, it has been frequently observed, are apt to introduce bad law."   And in *Abbott v. Gatch*, 13 Md. 314, and in *Taylor v. Turley*, 33 Md. 500, this Court declined to permit considerations of great hardship to influence the rigid enforcement of established legal principles.   Obviously a principle, if sound, ought to be applied wherever it logically leads, without reference to ulterior results.   That it may in consequence operate in some instances with apparent or even with real harshness and severity does not indicate that it is inherently erroneous.   Its consequences in special cases can never impeach its accuracy.

The other circumstance which the jury should have been allowed to consider as affecting the market value of that part of the leasehold estate remaining after Gay street

has been widened, is that the building will, by reason of the widening of the street, require a new front wall, and it will be necessary to remove the elevator from its present position to some other place on the premises. The lessor is under no covenant to make repairs; and the lessee is confronted with the alternative of either abandoning the premises for which he must, notwithstanding its untenantable condition, pay full rent during the continuance of the term, or of restoring the front wall and re-constructing the elevator at his own cost and expense to make the premises habitable and available. The appellant's second and third prayers distinctly raise this question.

Now, the common law has always thrown the burden of repairs upon the tenant, though it imposes no obligation on him to make them unless he covenants to do so. *Taylor, Land & Ten.*, sec. 327, A covenant is never implied that a lessor will make them. *Moyer* v. *Mitchell*, 53 Md. 176; *Sheets* v. *Selden*, 7 Wall. 423; *Gott* v. *Gandy*, 2 Ellis & Bl. 845; *Pomfret* v. *Ricroft*, 1 Wms. Saund. 321, 322, *n*; *Kramer* v. *Cook*, 7 Gray, 550; *Doupe* v. *Genin*, 45 N. Y. 123. So unvarying is this doctrine that even a Court of Equity will not compel the landlord to expend in making repairs the money received by him upon fire insurance policies after the destruction of the demised premises; unless he has expressly agreed to so apply the proceeds. Nor will a Court of Equity, when the premises have been burned down and the landlord has collected the insurance, prevent him from suing for the rent, even though he refuses to rebuild, if he be under no covenant to repair. *Leeds* v. *Cheetham*, 1 Sim. 146; *Loft* v. *Dennis*, 1 Ellis & E. 474; *Belfour* v. *Weston*, 1 T. R. 310; *Holtzapffel* v. *Baker*, 18 Ves. 115. And this is so, because a tenant is obliged to continue the payment of rent during the term, although the premises may become untenantable for want of repair, or from any other cause, or should even have been burned down in the meantime, unless he protects himself by an express covenant against liability in these contingencies.

*Lamott* v. *Sterrett*, 1 H. & J. 29; *Wagner* v. *White*, 4 H. & J. 564; *Taylor, Land & Ten.*, sec. 329; *Moffatt* v. *Smith*, 4 N. Y. 126; *Fowler* v. *Bott*, 6 Mass. 63; *Bussman* v. *Ganster*, 72 Pa. 285; *Monk* v. *Cooper*, Ld. Raym. 1477. In the lease under which the appellant holds there is no covenant requiring the landlord to make repairs. Under the law none is implied. The removal of the front wall of the building, and the removal of the elevator, will materially lessen the value of the tenant's estate. The landlord is under no obligation to rebuild the wall or to re-construct the elevator. What is the consequence? If the tenant abandons the premises because they are untenantable, he must still pay the rent. If he repairs them to make them habitable, he must do so at his own cost. In either event he will be directly and seriously injured in his estate by the act of the city in condemning part of his property for a public purpose. It is self-evident that a house without a front wall will be untenantable and practically useless. But the tenant, though he may be unable to occupy the premises because the city removes the front wall, must pay his rent. He cannot compel the landlord to restore the wall, even if. the landlord has been compensated by the city for doing so. "The lessee cannot maintain an action against the landlord to recover from him a certain portion of the sum assessed to him, on the ground that it was intended for the purpose of putting the property in a tenantable condition. The lessee should see to it that that item of damages is allowed to him." *Mills on Em. Dom.*, sec. 70; *Turner* v. *Williams*, 10 Wend. 140; *Brooks* v. *Boston*, 19 Pick. 174. As then the tenant is bound to repair and must rebuild the front wall to make the house tenantable, and must restore the elevator if he wishes to use it, whatever sum of money may be required for these purposes should have been awarded by the jury to be paid by the city to the tenant; and if the city has paid it to the landlord it cannot on that account escape its obligation to pay it to the tenant before taking possession of his property. It would be a strange concep-

tion of "just compensation" to the tenant if the money needed to make the house tenantable were awarded to the landlord, and the tenant to whom the injury is in fact done were left to rebuild at his own expense. Upon the plainest principles of justice, whatever cost the city causes the tenant to incur in making repairs which are rendered necessary by its acts in widening the street is a proper element of the damage he sustains and should be considered and estimated by the jury in measuring the market value of the residue of the leased premises, after the appropriation of a part of those premises for the bed of Gay street. Obviously, then, the second and third prayers of the appellant ought to have been granted, and the second instruction given at the instance of the city should have been refused.

What has been said disposes of all the questions before us, and it follows that there was error in granting the instructions asked by the city, and in refusing the prayers presented by the appellant. The rulings excepted to, will therefore be reversed and a new trial will be awarded.

*Rulings reversed with costs above and below, and new trial awarded.*