WILLIAM PHYFE, Respondent, *v.* CHARLES EIMER, B. G. AMEND and PAUL AMEND, Appellants.

One of full age, and acting *sui juris*, can waive a statutory, or even a constitutional provision in his favor, affecting simply his property or alienable rights, and not involving considerations of public policy.

The provision of the act of 1818 (section 181), is clearly intended as a protection to the tenant against his agreement to pay rent, after the demised premises, or a portion of them, have been condemned for a public purpose and as an indemnity to him for the consequent loss or diminution of value of his term. But it does not incapacitate him from making, with his landlord, a contract waiving such protection, if he finds it to his advantage so to do.

Where the defendants took a lease from the plaintiff of certain stores in the city of New York, contracting with special reference to the then anticipated taking of a part of the demised premises for a city improvement before the expiration of the lease, and covenanted that, in such event, they would pay rent up to the time of the removal of such part of the buildings as should be taken, and from that time, the whole lease

should be terminated; and after the confirmation of the commissioners' report, they occupied the premises for nearly a year, paying rent, and in November, 1868, obtained an agreement from the plaintiff, indemnifying them against all claims of the city for rent, and they left the premises January 1st, 1869, the premises not being actually taken by the city till April 17th, 1869.—*Held*, that the plaintiff could recover for the quarter's rent accruing February 1st, 1869.

(Argued February 6th, 1871; decided March 21st, 1871.)

APPEAL from a judgment of the General Term of the Superior Court of the city of New York affirming a judgment for the plaintiff upon a verdict rendered at the Circuit by direction of the court.

On the 26th of September, 1867, the plaintiff leased to the defendants, the three upper lofts of No. 184 Fulton street, in the city of New York, for $2,500 a year, payable quarterly. The lease, by its terms, expired May 1st, 1871, unless sooner ended by the *actual removal of the building* by the city, for the purpose of opening or extending Church street, rent to be paid up to such event.

The report of the commissioners, appointed in the proceedings taken for opening and extending the street named, was finally confirmed December 30th, 1867. The premises in question, except a few feet, were required and taken. The opening of the street and removal of the building actually took place April 17th, 1869.

The defendants remained one year subsequently to the confirmation, paying the plaintiff $2,500, and voluntarily abandoned the premises January 1st, 1869. This action was upon the lease for the quarter's rent accruing afterward. Additional facts are sufficiently stated in the opinion of the court.

*John B. Perry*, for the appellant.

*Livingston K. Miller*, for the respondent.

RAPALLO, J.  We do not think it necessary, in this case, to pass upon the questions, elaborately argued on the part of the

appellant, as to the existence of a power, under the act of 1818, to suspend the street extension for fifteen months, and as to the time when, and manner in which, this power, if existing, must be exercised by the common council.

Assuming, for the purposes of the present case, that the counsel for the appellant is right in his position, that the title to that portion of the demised premises which has been taken for the extension of Church street passed to the corporation at the date of the confirmation of the report, December 30, 1867, or at the expiration of four months from that time, such change of title does not necessarily preclude the plaintiff from recovering the rent in question, provided there was an express agreement between the parties, on a valid consideration, that the defendants would, notwithstanding the change of title, pay the rent to the plaintiff, until actual eviction, and look to him for indemnity against any claim by the city for the same rent.

It is contended, on the part of the appellants, that such an agreement is void, first, as being in contravention of that portion of the act of 1818 (§ 181) which provides that, where part of a lot is taken, all contracts respecting the part so taken shall be discharged, and the rent shall be apportioned, and only the part equitably payable for the residue shall be demanded, and that no more shall be demanded or paid or recoverable for or in respect of the same; and, secondly, because such an agreement is in contravention of the duties of the parties as citizens, and a fraud upon the public treasury.

The first objection is sufficiently answered by reference to the familiar principle, that a party of full age, and acting *sui juris*, can waive a statutory or even a constitutional provision in his own favor, affecting simply his property or alienable rights, and not involving considerations of public policy. (*Embury* v. *Conner*, 3 N. Y., 50; *Baker* v. *Braman*, 6 Hill, 47; *Kimball* v. *Munger*, 2 id., 364; *Kneetle* v. *Newcomb*, 22 N. Y., 244, 252.)

The statutory provision in question is clearly intended as a protection to the tenant against his agreement to pay rent,

after the demised premises, or a portion of them, have been condemned, and as an indemnity to him for the consequent loss or diminution of the value of his term. But it does not incapacitate him and his landlord from making a different agreement, if they find it to their mutual interest so to do.

In the absence of such an agreement, the tenant would be justified, where the demised premises are taken, and after the title of the city has vested, in abandoning the premises, treating his term as at an end, and refusing to pay rent.

Unless the city entered immediately, the landlord would, in such a case, remain in possession, and could hold as against all the world except the city; and so long as the city should refrain from asserting its title, he could enjoy the use of the premises, or if, while so holding, he should let them to another, such tenant would be bound to pay him rent until evicted by the city, and would be estopped from denying his landlord's title. Such would be the rights of the landlord, in the absence of any action on the part of the city. Whether the city could reach these rents, if it should make the claim, and the proper mode of doing so, are questions not involved in this case.

If the lessee, whose lease has thus been terminated, as to the whole or a part of the premises, chooses, instead of treating it as thus terminated, to contract with the landlord for the enjoyment of his temporary and uncertain right of possession, and the landlord, instead of enjoying the premises himself, allows to his tenant the benefit of such temporary occupation, and indemnifies him against any claim of the city for rent, there is a valid consideration for the agreement to pay the rent to the landlord.

We are unable to perceive any fraud or illegality in such a transaction. If, as is claimed by the appellants, they are bound to pay rent to the city from the time of the confirmation of the report, or from the expiration of four months thereafter, they have not discharged themselves from that obligation by agreeing to pay to the landlord, but have added to the security of the city by taking an indemnity from the landlord, which furnishes them with the means of payment.

If the city is to look to the owner of the land for the rent, its remedies against him are not impaired.

In the present case, the appellants, by their original lease, contracted specially with reference to the anticipated taking of a part of the demised premises for this improvement, before the expiration of their lease, and covenanted that in such event they would pay rent up to the time of the removal of such part of the buildings as should be taken, and that from that time the whole lease should terminate, instead of the rent being apportioned as provided by the statute.

The parties made a convention between themselves, which in their judgment was better adapted to the protection of their respective interests, than the provisions of the statute, and in so far as the statute operates merely to regulate their rights as between themselves, they had power so to do.

But, in addition to this, after the confirmation of the commissioners' report, the appellants continued for nearly one year to occupy the premises, and to pay rent as agreed; and, on the 4th of November, 1868, at their request, the plaintiff delivered to them an instrument of indemnity, reciting the proceedings and the title of the city, and that the appellants desired to continue in the occupation of the premises, that the plaintiff claimed rent therefrom, and that the appellants were willing to pay it, and indemnifying them against all claims of the city for rent during the time they should pay rent to the plaintiff, and to the amount so paid.

The request for and acceptance of this instrument was of itself sufficient evidence of an agreement to pay rent to the plaintiff, for the use and occupation of the premises after the alleged change of title. Under this arrangement, the appellants continued to occupy the premises until January, 1869, when they voluntarily removed therefrom. The city did not interfere with the premises till April, 1869, and this action is brought to recover the quarter's rent due February 1, 1869.

We are of opinion, that, as between the parties to this action, the appellants having had the use of the premises, and having agreed to pay this rent to the plaintiff, they are bound

to do so, and that the rights of the city cannot be invoked to protect them against their own contract.

The judgment should be affirmed with costs.

All the judges concurring, judgment affirmed with costs.