Allen, J.
The enactment under which the judgments, from which the defendants seek to be released were perfected, makes a part of an act entitled “ An act for the establishment and regulation of the police of the city of Hew York.” (Laws of 1844, chap. 315.) The principal provisions of the law are strictly within its purpose, as expressed by its title, *86 and relate only to the organization of the police force of the city, its officers, and their appointment, removal, compensation and general duties. But slight reference is made in the act to police magistrates, or other judicial officers, and there is nothing in the act itself connecting the section, under which the proceedings under review were had, with the duties of any particular class of judicial officers, or courts of criminal jurisdiction. The provision makes a part of article 4 of the law which is entitled “ compensation of officers,” and the provision stands by itself, and is independent of every other provision of the statute. (Laws of 1844, supra, art. 4, § 8.) The language is general and sufficiently comprehensive to-embrace all recognizances taken by any magistrate or court for the appearance of persons to answer to criminal charges. The language is: “ All cognizances given to answer to a charge-preferred, or for good behavior, or to appear and testify in all cases cognizable before courts of criminal jurisdiction, on being forfeited shall be filed,” etc. A charge or complaint may be preferred by individuals before a magistrate upon which arrests-may be made and recognizance taken, for the appearance of the accused, or it may be preferred by the presentment of a grand jury in the form of an indictment. An indictment is-merely a written accusation of one or more persons of a crime of a public nature, preferred by and presented upon oath by a grand jury. (Wharton’s Law Die.) It is an accusation by a grand jury to a court having jurisdiction to take proceedings for the -arrest and punishment of the offender. The language of the act is technically as applicable to recognizances taken after indictment as before, and there is nothing in the terms employed, or in the Connection of the provision with other parts of the act, or in the act itself, to restrict its operation to recognizances taken by committing magistrates, or before indictment, as is urged by the appellants. The act has for thirty years received and had a practical interpretation in accordance with these views, and it would seriously affect the administration of criminal law in the city of New -York to give it a different and more restricted interpretation at - this *87 late day, even if there might have been reason for some doubt at the first, as to the true meaning and intent of the legislature. But we see no reason to doubt that the practical construction was warranted by the language used.
The notice required by chapter 302 of the Laws of 1846, from the sheriff to the chief of police, and by him to the Court of Sessions and the Police Courts, of the result of attempts to collect judgments upon recognizances by execution, and the cause.of a failure to collect, was for a purpose entirely foreign to the character of the recognizances, or the court in which or magistrate by whom they were taken, and therefore does not aid in the interpretation of the act under consideration. The object of the notice was to protect the courts and magistrates named from imposition by fraudulent or irresponsible sureties; and no notice was necessary to courts of record for the reason that the district attorney would have knowledge of the facts in virtue of his office, and would not be liable to imposition as would the police magistrate and the courts named.
The act of 1844 and chapter 343 of the Laws of 1839 have no connection with each other, except as they both deal with the same general subject. They have respect to different remedies, in part, and that given by the later act is cumulative and does not interfere with those regulated or prescribed by the earlier statute, and they are independent of each other and both are valid. (Almy v. Harris, 5 J. R., 175 ; Wetmore v. Tracy, 14 Wend., 255.) Ho help in the construction of either act is derived by a reference to the other.
It is claimed that part of the act of 1844, in pursuance of which these judgments were perfected, was repealed by chapter 202 of the Laws of 1855 extending the provisions of the Code of Procedure to forfeited cognizances and repealing all laws in conflict with the same. If this provision is effective for any purpose it only subjects actions upon recognizances, when brought, to the provisions of the Code. It does not, in terms, require actions to be brought in all cases, or repeal the act authorizing summary judgments in the city of Hew York, *88 upon recognizances, on default being made in their condition. Whatever be its ' interpretation and effect in respect to “ recognizances forfeited in any Court of General Sessions of the Peace, or of Oyer and Terminer in any of the counties of this State,” it does not operate as a repeal of special legislation upon the same subject, affecting and applicable only to the city of New York. As such special legislation was consistent with different general provisions of law, controlling in all other parts of the State, it is equally consistent with the provisions of the act of 1855 ; and no intent of the legislature to repeal or interfere with special statutes, applicable only to the city of New York, can be implied from general legislative action upon the subject. Repeal of statutes by implication is not favored and only takes place when two acts are so inconsistent' that both cannot stand, and then the later act prevails. Laws, special and local in their application, are not deemed repealed by general legislation, except upon the clearest manifestation of an intent by the legislature to effect such repeal, and ordinarily an express repeal by some intelligible reference tq the special act is necessary to accomplish that end. But all questions in respect to the vitality of the law under consideration is answered by the law of 1861 declaring the same to “ be in force, and that it shall be applicable to the city and county of New York.” (Laws of 1861, chap. 333.) The act embraces but parts of one general subject, and each part of the act is closely connected with every other part, and the whole subject, in all its details, is well expressed in the title: “ An act in relation to fines, recognizances and forfeitures.” (Conner v. Mayor, etc., 1 Seld., 285; In re Mayer, 50 N. Y., 504.) The proceedings and entry of judgment, upon the recognizances, were authorized by the act of 1844, expressly continued in force by the act of 1861.
The defendants urge, as a further ground for vacating the judgments, that the summary method of perfecting judgments upon forfeited recognizances, authorized by the laws of 1844 and 1861, is in direct contravention of the fundamental *89 doctrine embodied in the State Constitution, that “ no person shall be deprived of life, liberty or property, without due process of law.” (Const., art. 1, § 6.) The same provision is found in the federal Constitution, in the form of a restriction upon the States. (Art. 14, § 1.)
It is sufficient to say that the defendants are not in a situation to take this objection. A party may, by his voluntary act, waive any and every right or privilege personal to himself, and affecting only his rights of property, conferred or secured to him either by the Constitution or by statute. (Phyfe v. Eimer, 45 N. Y., 102; Embury v. Conner, 3 Comst., 511.) The law permitting judgment to be perfected upon the recognizances upon default in the condition, was in force at the time the recognizances were entered into and made a part of the terms and conditions of the undertaking and covenant of the parties, as much as if inserted bodily in the instrument. By the recognizances the defendants acknowledged an indebtedness to the people in the sum named, subject tó a defeasance, and consented that upon a failure to perform the condition, the debt should become absolute, and might be made a debt of record and judgment perfected thereon, which should be a lien upon real property, and upon which execution might issue as upon other judgments for the recovery of a sum certain.
The cognizors voluntarily waived their right to any day in court other than that given them by the terms of the recognizance, and their consent to the remedy given by law, subject to and pursuant to which the recognizances were taken, was as in the case of a bond and warrant of attorney for the confession of a judgment, a substitute for, and a waiver of the necessity of any other process of law. The remedy taken pursuant to the act, and thus acquiesced in by the defendants, was “ due process of law,” and a compliance with the Constitution in that respect. The defendants had in truth a day in court, if that was essential to the validity of the proceedings. They undertook for the appearance, that is, that they would have the body of their principal in court at a time appointed, and it *90 was their privilege to appear at that time with their principal, who was constructively in their custody, or show cause why they did not perform the condition, and legally excuse the default, and prevent a forfeiture of the recognizance.
The defendants also seek to avoid the judgments on the ground that they were taken in disregard of the provision of the Constitution of the United States (art. 7), declaring that in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and the Constitution of the State (art. 1, § 2), preserving inviolate the trial by jury in all cases in which it has been heretofore used. The right to a trial by jury, if any such right would have existed but for the special laws affecting the obligations and liability of the defendants, was waived by the terms of the recognizances and assent of the cognizors, and in' all civil proceedings the right of a trial by jury may be waived. (People v. Murray, 5 Hill, 468; Lee v. Tillotson, 24 Wend., 337.) But the proceedings for judgment were not suits at common law, but a special statutory proceeding, summary in its character and unknown to the common law, and therefore not within the provision of the federal Constitution invoked by the defendants. Neither are proceedings for the forfeiture of recognizances, and enforcing their collection, cases in which a trial by jury has been heretofore used within the meaning of the State Constitution. The legal character and effect of recognizances, and their history, and the course of procedure upon a default in a performance of their condition, as well at common law as under the statutes of the State, as they have varied from time to time, are considered in Gildersleeve v. People (10 Barb., 35), and People v. Lott (21 id., 130), and the policy and validity of the act of 1844 satisfactorily vindicated. It suffices to say now that a recognizance at common law and under the statutes of this State becomes and is, when- properly filed or enrolled, a debt of record, subject to a condition that it shall be discharged or become void upon the performance of the thing stipulated. It is an obligation of record. They do not in this State bind *91 lands at this time, but are merely evidences of debt. (2 II. S., 362, § 21.) Whether, when properly filed or enrolled, it is any the less a debt of record, that is, evidenced by the record, than at common law and the earlier statutes of the State, is not material, and need not be considered. But at common law and under the earlier statutes of this State, it was a debt of record, proved only by the record, and the forfeiture, upon default in the performance of the condition, was also matter of and proved by the record.
In actions upon recognizances, the trial was at common law by the record, and by the court and not by a jury, and even in actions upon recognizances an issue upon the existence of the recognizance as well as the forfeiture were not triable by a jury. (Bac. Ab., Trial [B]; Hoe v. Marshal, Cro. Eliz., 131; Welby v. Canning, Kob., 210; 2 Arch. Pr., 873; Knapp v. Mead, 2 J. Cas., 111.) If the issue involved matters of fact, as well as matters of record, it was to the country. But it is enough that an action upon a recognizance was not necessarily triable by a jury, although questions of fact might arise in actions thereon properly triable in that form.
The remedies upon forfeited recognizances have at all times been subject to legislative action and regulated by statute, and summary proceedings, rather than formal suits at law, have been usually allowed.
It is only when common-law actions are brought for their collection that they are within the rules prevailing in common-law proceedings, and a jury trial may be demanded.
The orders must be affirmed.
All concur.
Order affirmed.