### STEWART v. BRIGGS.

(Supreme Court, Appellate Division, Third Department.    May 4, 1910.)

1. LANDLORD AND TENANT (§ 63*)—TITLE OF LANDLORD—ESTOPPEL OF TENANT TO DISPUTE.
    A tenant may show that the interest of his landlord has expired since the making of the lease, or that he has sold the land, or has been evicted, or that the land has been taken by condemnation, so that he has no longer the right to receive rent, but the tenant may not dispute the title of the landlord at the commencement of the tenancy.
    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 159–176; Dec. Dig. § 63.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. LANDLORD AND TENANT (§ 191*)—TITLE OF LANDLORD—RIGHT OF TENANT TO DISPUTE.

Notwithstanding Laws 1905, c. 724, § 11, as amended by Laws 1906, c. 314, § 2, providing, relative to the acquisition of real estate by the city of New York for a water supply reservoir, that on filing oaths of the commissioners the city shall become seised in fee, but not entitled to possession until it shall pay the owner one-half of the assessed valuation, and providing that thereupon the board of water supply may enter on the real estate, an owner in possession of land after the filing of the oaths of the commissioners may lease the same and may collect rent from the tenant after the payment by the city of one-half of the assessed valuation until the city takes actual possession thereof, and the tenant's attornment to the contractors for the building of the reservoir who were not agents of the city for the purpose of taking or demanding possession was a nullity under Real Property Law, § 194 (now Consol. Laws, c. 50 [Laws 1909, c. 52] § 224).

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 191.*]

Appeal from Ulster County Court.

Action by Eleanor I. Stewart against Harry A. Briggs. From a judgment of the County Court of the County of Ulster (63 Misc. Rep. 107, 118 N. Y. Supp. 497) in favor of plaintiff, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

A. D. Van Buren, for appellant.
Martin Conboy, for respondent.

HOUGHTON, J. On the 1st day of January, 1907, the plaintiff was owner of real property consisting of a farm upon which there was a house and outbuildings, in the county of Ulster, and in the territory deemed necessary by the board of water supply of the city of New York to be taken for the purpose of furnishing an additional supply of water to that city, and which has since become known as the "Ashoken Reservoir." On that day the city of New York caused to be filed a map covering the property in question, thereby instituting condemnation proceedings, in conformity with chapter 724 of the Laws of 1905, as amended by chapter 314 of the Laws of 1906. On the 2d day of May following, condemnation commissioners, duly appointed, filed their oaths of office, and on the 11th day of November plaintiff leased to the defendant, in writing, for residential purposes only, the house and outbuildings on said land for the period of one year commencing the 1st day of December, 1907, at a yearly rental of $420, payable monthly in advance. The defendant entered into possession and paid the monthly rental until August, 1908, when he refused to make further payments. On the 7th day of May, 1908, an order was made permitting the city of New York to deposit one-half the assessed valuation of the property to the credit of the plaintiff pursuant to section 11 of the above act, and such money was deposited on the 22d day of July following. The refusal of the defendant to pay further rent to plaintiff was based upon the contention that, by such deposit of money to the credit of the plaintiff, title ripened in the city, and that the

plaintiff's interest in the land therefore expired, and that she was no longer entitled to receive rent.

Section 11 of the above act, which deals with the vesting of title in the city and its right to possession of the lands condemned, provides that on filing the oaths of the commissioners:

"The city of New York shall be and become seised in fee of all those parcels of real estate which are on the maps in the fifth section referred to described as parcels, of which it has been determined that the fee should be acquired; and may immediately or at any time or times thereafter take possession of the same or any part or parts thereof without any suit or proceeding at law for that purpose; provided however that before the city of New York takes possession of the same it shall pay to the respective owner or owners of each of said parcels of real estate, a sum of money equal to one-half the assessed valuation of said real property as the same appears upon the assessment-roll of the town in which the same is situate for the year nineteen hundred and five. Deposit of the money to the credit of, or payable to the order of the owner, pursuant to the direction of the court, shall be deemed a payment within the provisions of this section, and, thereupon, the board of water supply of the city of New York, or any person or persons acting under their or its authority may enter upon and use and occupy in perpetuity all the parcels of real estate described in said map for the purpose of constructing and maintaining on, in, under, or over the same, the said aqueducts," etc.

The act provides that the construction of the reservoir shall be let by contract, and this had been done and the contractors had been at work in the vicinity of the premises in question for some months prior to the execution of the lease, and had removed or changed certain portions of the soil of the farm upon which the buildings were situated. The defendant was employed by the contractors and knew the general situation with respect to the taking of plaintiff's lands by condemnation and what was being done on them before he entered into his lease with the plaintiff.

The learned county judge before whom the case was tried held that there had been no actual taking of the leased premises on the part of the city, and that, as between the defendant and the plaintiff, the defendant was not released from the payment of rent by the constructive possession which the city obtained through its deposit of money pursuant to the order of the court. We think this holding was right, and that the judgment should be affirmed.

Although a tenant may show that the interest of his landlord has expired since the making of the lease, or that he has sold and conveyed the land, or that he has been evicted by paramount title, or that the land has been taken from him by paramount right of eminent domain, which has the force of eviction by title paramount, and hence that he has no longer the right to receive rent, still he never can be heard to say that his lessor had no title to the premises when the tenancy commenced. Taylor on Landlord & Tenant (7th Ed.) § 708; Lewis Eminent Domain (2d Ed.) § 483. By virtue of the section of the statute quoted, title to the premises vested in the city on the filing of the oaths of the commissioners in condemnation on the 2d day of May, 1907. When the lease was made, therefore, in November following, title was in the city, but the plaintiff was in possession. When the order was made in May, 1908, permitting the city to make deposit for plaintiff's account of one-half the assessed value of the property, and when the

money was so paid, plaintiff was still in occupation through the defendant, her tenant. The city never demanded that the premises be vacated, and, although having the right to enter it, did not actually take possession. So far as appears, the contractors for the building of the reservoir were not agents of the city for the purpose of taking possession or of demanding it. They were strangers to the title and strangers to the land, and the attempted attornment of the defendant to them was a nullity, and was prohibited by statute. Real Property Law, § 194 (now Consol. Laws, c. 50 [Laws 1909, c. 52] § 224). The city had the right to permit the plaintiff to remain in occupation of the premises as it did do, or it had the right to oust the plaintiff and her tenant and itself take actual possession. Had it ousted the plaintiff and taken actual possession, the defendant would have been relieved from paying rent to the plaintiff, and would have been justified in attorning to the city. Whether the plaintiff at the time of making the lease had any title or not, as to the defendant she had perfect title and full right to lease because he is not in position to dispute in that regard. She had no more and no less title in August when defendant refused to pay than she had when the lease began. The defendant chose to bargain with the plaintiff and to hire property which the city could take at any time it saw fit upon compliance with the statute, and thus terminate his lease. Until the city did take possession, however, and so terminate his agreement with the plaintiff, he was bound to pay to her the rent stipulated by his contract.

In Phyfe v. Eimer, 45 N. Y. 102, the premises were leased in contemplation of an improvement to the street which would involve their partial destruction, actual entry into possession by the city after vesting of title in it was delayed, and the tenant continued in occupation and sought to evade payment of the full rent, under the provisions of section 181 of what is known as the act of 1813 (Laws 1813, c. 86), providing as to New York City for abatement in whole or in part of the rent of property condemned. The following language peculiarly pertinent to the questions involved in the present case occurs in the opinion of the court delivered by Rapallo, J.:

"Unless the city entered immediately, the landlord would, in such a case, remain in possession, and could hold as against all the world except the city; and, so long as the city should refrain from asserting its title, he could enjoy the use of the premises, or if, while so holding, he should let them to another, such tenant would be bound to pay him rent until evicted by the city, and would be estopped from denying his landlord's title. Such would be the rights of the landlord, in the absence of any action on the part of the city. Whether the city could reach these rents, if it should make the claim, and the proper mode of doing so, are questions not involved in this case."

The defendant, having chosen to bargain with the plaintiff to lease from her the temporary and uncertain possession which the city might accord to her through inaction on its part, should be held to his bargain, and not having been disturbed in such occupancy by the city, he must pay the rent as agreed.

It follows that the judgment should be affirmed, with costs. All concur.