Ellerton A. LODGE, Henry G. Lodge, Mary C. Lodge and Elinor L. Gillespie

v.

**COLUMBIA PACKING COMPANY.**

**Civ. A. No. 57–190–F.**

United States District Court
D. Massachusetts.

May 29, 1958.

Howard S. Whiteside, Parkman, Robbins & Russell, Boston, Mass., for plaintiffs.

Joseph T. Fahy, Peabody, Brown, Rowley & Storey, Boston, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

Plaintiffs, owners of certain real estate on Blackstone Street in Boston, leased said premises to defendant corporation under a lease which, as extended, ran until February 28, 1952. On January 30, 1951, the Department of Public Works acting on behalf of the Commonwealth of Massachusetts made an order of taking by eminent domain of the entire leased premises for highway purposes, entry on the premises was made on February 16, 1951, and the order of taking and certificate of entry duly recorded. Although formally ordered to vacate the premises, defendant continued to occupy them under an oral agreement with representatives of the Commonwealth, remaining in undisturbed possession until after February 28, 1952.

Plaintiffs bring this action for rent under the terms of the lease in the amount of $2,933.37 for the period from April 1, 1951, to February 28, 1952, and for the additional sum of $478.40, being the excess over $966 of plaintiffs' real estate taxes for the year 1951, which the lease provided the lessee was to pay. Despite demand by the plaintiffs, defendant has never paid these sums. There is a further claim for $200 for additional rent for the period from March 1, 1948, to February 28, 1949, during which defendant paid rent of only $216.67 monthly instead of $233.34 monthly as provided in the lease. Defendant concedes that it owes this $200.

Plaintiffs' claim against the Commonwealth of Massachusetts for damages for the taking of their property was settled by agreement. Defendant filed no petition for damages in connection with the taking and no payment was ever made to it. Defendant paid no rent to the Commonwealth for the period after the taking when it continued to occupy the premises and no such rent has ever been demanded.

The general rule is that the taking by eminent domain of the entire leased premises, as distinguished from a taking of only part of the leased property, terminates the lease along with the lessor's title, and releases the lessee from liability for rent accruing subsequent to the taking. 52 C.J.S. Landlord and Tenant § 483, p. 244. This is clearly the law in Massachusetts, where the rule has been stated, "But, even without eviction by, or attornment to, the holder of the new title, the liability to pay the rent reserved ceased with the termination of the plaintiff's estate during the term subsequent to the making of the lease and the entry of the defendant under it." O'Brien v. Ball, 119 Mass. 28, 30. The liability for rent thus ceases with the termination of the lessor's estate and does not, as plaintiffs here contend, continue until the possession of the lessee is disturbed. The rule relied upon by plaintiffs that a tenant in quiet possession cannot question his landlord's title, Connolly v. Kilcourse, 285 Mass. 398, 189 N.E. 199, does not apply here where lessee does not question the lessor's title at the beginning of the lease but relies only on the fact that it has been terminated during the period of the lease. Lamson v. Clarkson, 113 Mass. 348.

The case of W. M. McDonald Company, Incorporated, v. Hawkins, 287 Mass. 71, 191 N.E. 405, cited by plaintiffs is clearly distinguishable. There the leased property consisted of floors in two separate buildings, demised in a single lease. Only one of the buildings was taken by

the city, and it is quite clear that the court proceeded on the basis that this constituted a taking of only a part of the entire demised premises and for that reason did not terminate the liability for rent.

■ Plaintiffs, however, contend that regardless of this rule, the parties to a lease may agree that the obligation to pay rent shall continue even after a taking of the whole property and that in this case they have done so by a provision in the lease which reads:

"This Lease Is Made On Condition that in case the whole or any substantial part of the demised premises or of said building be destroyed or damaged by fire or any unavoidable casualty, or be taken, damaged, or destroyed by public authority, or be damaged or injured directly or consequentially by reason of anything lawfully done in pursuance of any public authority whereby either the Lessor or the Lessee may be entitled to compensation, after the execution and before the termination hereof, then this lease may, at the election of the Lessor or the Lessee within a reasonable time, be terminated, and such election may be made in case of any such taking, notwithstanding that the entire interest of the Lessor may have been divested by such taking, provided that, if the same be not so terminated, and if the demised premises or any part thereof are rendered unfit for use and occupation, a just and proportionate part of the rent, according to the nature and extent of the injury to the demised premises shall be suspended or abated until the premises shall have been put by the Lessor in as good condition for use and occupation as at the time of such taking, damage, or destruction."

Plaintiffs' argument is that the language of this provision providing for termination of the lease at the election of either party even in the case of a taking of the whole of the demised premises can be given meaning only if interpreted as implying an agreement of the parties that, contrary to the general rule, the taking should not terminate the lease. Whatever merit this argument might have if this were a case of first impression, election provisions substantially similar to the one in this lease, have long been interpreted otherwise by the Massachusetts courts. In the leading case of Goodyear Shoe Machinery Company v. Boston Terminal Company, 176 Mass. 115, at pages 116, 117, 57 N.E. 214, at page 215, Chief Justice Holmes pointed out, "of course, any valid taking of the whole premises would put an end to the lease, (O'Brien v. Ball, 119 Mass. 28), and therefore the provision quoted must not be construed too literally in its application to the present case. The object is that which is pointed out in Munigle v. City of Boston, 3 Allen, 230, 232, and the meaning is that the landlord can terminate the right of the tenant to share in the damages." This interpretation has been followed in numerous cases. United States v. 3.5 Acres of Land, D.C., 57 F. Supp. 548; Newman v. Commonwealth, Mass., 146 N.E.2d 485; Sparrow Chisholm Co. v. City of Boston, 327 Mass. 64, 97 N.E.2d 172. In the light of the long-established interpretation of such clauses, it cannot be held that the parties to this lease intended any other result from their use of similar language in the provision quoted above.

■■ The lease contained the following provision as to payment by the lessee of a part of the taxes on the property:

"If the real estate taxes assessed with respect to the premises should be an amount in excess of $966.00 for any calendar year during the term hereof, the Lessee covenants and agrees to pay to the Lessor the amount in excess of $966.00 on November first of each such years during the term hereof upon being billed therefor by the Lessor, provided, however, that for the year 1947, the amount in excess of $966.00, if any, shall be apportioned so that the Lessee shall pay 10/12ths thereof and that for any year thereafter

during which the term of this lease shall expire or terminate, the amount in excess of $966.00, if any, for such year shall be apportioned so that the Lessee shall pay the portion of such excess proportionate to the number of months of such year that the premises were occupied by the Lessee."

What has been said with respect to the payment of rent would seem to apply with equal force to the payment of taxes under this provision, since the payment required by it is in effect a supplementary payment by the lessee for the use of the property. Once the lease has been terminated by the taking, defendant no longer occupies the property under the lease and its obligation for tax payments should cease when its obligation for rent ceases. Similarly the language of the quoted provision providing for apportionment of this tax payment upon termination of the lease should be given effect by limiting defendant's liability to that portion of the excess proportionate to that part of 1951 which preceded the taking. Defendant concedes it owes that part of the tax excess apportionable to the period from January 1, 1951, to February 16, 1951, in the amount of $61.57. The language of the provision making defendant's proportionate share of the excess dependent on the number of months the premises were occupied by lessee clearly should mean the number of months the premises were occupied by lessee as lessee of this lessor under this lease and should not include occupation of the property after the lease has terminated and lessor has no further ownership in the property. Moreover, while plaintiffs here paid the full tax for 1951, they were entitled to recover as part of the damages for the taking that part of the tax allocable to the part of the year which followed the taking, Mass.G.L.Ch. 79, § 12, as amended. The lease provisions cannot be held to mean that plaintiffs are also entitled to be reimbursed by defendant for a part of that portion of the tax payment which they are entitled to recover in full from the Commonwealth.

The conclusion must be that plaintiffs are not entitled to recover any rental payment or tax payment for the period following the taking of the leased premises by the Commonwealth. They are entitled to judgment for the amounts conceded to be due by defendant, the $200 attributable to underpayment of the rent for the year ending February 28, 1949, and the $61.57 tax payment attributable to the portion of 1951 preceding the taking, together with interest thereon.

Judgment for plaintiffs in accordance herewith.