William J. Dempsey, J.
Tills is a summary proceeding for eviction of a tenant for nonpayment of rent during April, May and June, 1962, and for a judgment against the tenant for $555 for unpaid rent during this period.
The tenant’s answer consists of a general denial and two counterclaims. The first counterclaim in substance alleges that the property was condemned by the State of New York on December 28, 1961, ending the landlord-tenant relationship; that the tenant under a mistake of fact paid rent to the landlord of $555 during the months of January, February and March, 1962; that the State of New York demands rent from the tenant for this same period and for April and May, 1962; and seeks a judgment against the landlords for $555 on this counterclaim. The second counterclaim seeks a judgment against the landlords for $300, which represents the security deposited by the tenant with the landlords at the inception of the relationship.
The landlords and tenant entered into a written lease for premises known as 3753 Merrick Road, Seaford, New York, on September 1, 1956, to terminate on August 31, 1959. The tenant occupies the premises as a drugstore. Since September 1, 1959 the tenant remained in possession of the premises paying an agreed rent of $185 monthly. Three hundred dollars Avas deposited by the tenant with the landlords as security under the terms of the original lease.
On December 28, 1961, the State of Nevv York filed certain condemnation maps known as Maps 218, 225 — parcel numbers 219, 226 — in the office of the County Clerk of Nassau County for highway purposes pursuant to section 30 of the Highway Law of the State of New York. This action, it is conceded, vested title in the State to the foiward portion of the premises owned by the landlords and to the entire building occupied by the tenant. Title to rear portion of the land, upon which part of the building is affixed, remains Arested in the landlords subject to a temporary easement in the State for the purpose of removing or razing the building. To the landlords is reserved the “ right and privilege of using this property, providing the exercise of such right and privilege * * * does not *652 * # * interfere with or prevent the user and exercise of the rights ” of the State.
Following December 28, 1961, and during January, February and Maxell, 1962, the tenant paid and the landlords received rents totaling $555. The tenant has not paid the landlords anything for the occupancy during April, May and June, 1962. The landlords then commenced this summary proceeding. State agents have been in contact with the tenant. They wish the tenant to execute an application for a permit “ for use of State owned property ” in connection with the tenant’s use and occupancy of the drugstore during the period April 1, 1962 to August 31, 1962, at a rate of payment for such use of $175 per month. No reference in the instrument is made to use and occupation of the drugstore for the period January, February, March, 1962.
The court is of the opinion that the landlord-tenant relationship herein, the lease, and any obligation of the tenant to pay rent to the landlords, ceased on December 28,1961. This appears to be the case both by statute and at common law.
Section 30 of the Highway Law has provided the State with means of seizing property by right of eminent domain for purposes of highway construction. Subdivision 6 covers vesting of title: “A copy of such description and map shall be filed * * * in the office of the county clerk * * * and thereupon the appropriation by the state of the property described in such description and map shall be deemed complete and the title to such property shall be vested in the people of the state of New York. ’ ’ Subdivision 2 defines property: ‘1 The term ‘ property ’ as used in this section is defined to include * * * leases * * * and every estate, interest or right legal or equitable.” Subdivision 5 gives the State of New York the right to “ immediately enter upon and take possession of the property so described for any and all purposes connected with the highway system of the state of New York.” Finally, subdivision 12 gives the State the right to employ summary proceedings “ to cause the removal of an owner or other occupant from such property.”
So it appears that this statute has given the State all of the indicia of absolute ownership of the property taken including the right to use the same remedy the landlords seek to invoke here against the tenant in possession.
The theory of the effect of condemnation upon a leasehold has been expressed as follows: “The effect of vesting of title in the condemnor is to deprive everyone else of either title or the right of possession. Accordingly, it is quite obvious *653 that anyone who remains in possession after title has vested in the condemnor is at most a tenant at will, and, unless the tenancy is acquiesced in hy the condemnor, a trespasser. Frequently, after title has vested, the nondemnor does not desire to commence the work of the improvement at once and permits the occupant of the premises to remain in possession. Such occupant is a tenant at will and is liable for the reasonable value of the use and occupation of the premises until possession is required by the condemnor. As a matter of practice, the condemnor, under such circumstances, customarily fixes the rent for which the tenant remains liable until ousted.” (Levey, Condemnation in New York [1957], p. 229.)
Apart from the statutory provisions of section 30 of the Highway Law, the common law supports the position that the obligation of the tenant to pay rent ceased after December 28, 1961. In Lodge v. Martin (31 App. Div. 13) a landlord sued a tenant for rent where, after the commencement of the tenancy, a condemnation of the premises ensued, and the landlord sought a judgment of the tenant for rents accruing subsequent to the condemnation. The court (McLaughlin, J.) stated (p. 14): “ There would be neither justice nor reason in a rule which would permit a party to collect rent for the use and occupation of lands which he does not own. When, therefore, as here, the estate of the landlord in the whole of the demised premises, as well as that of the tenant, has been extinguished by condemnation proceedings instituted on the part of the city before the rent sued for accrued, it must be held that the right of the landlord on the one hand to collect, and the liability on the other of the tenant to pay, ceased the moment that the title of the land passed to the city.”
The landlords herein argue that the tenant is obliged to pay rent to the landlords until such time as he is evicted by the State. They cite Phyfe v. Eimer (45 N. Y. 102) and Stewart v. Briggs (138 App. Div. 701). Neither case appears to be in point. In Phyfe, the landlord and tenant, knowing that a condemnation was coming agreed that when it came the tenant should pay rent up to the time of the removal of the buildings. In addition to that the landlord indemnified the tenant against all claims by the city for rent. The court (Rapallo, J.) said (p. 105): “In the absence of such an agreement, the tenant would be justified, where the demised premises are taken, and after title of the city has vested, in abandoning the premises, treating his term as at an end, and refusing to pay rent.”
In the Stewart case, after the condemnation had taken place the landlord and tenant agreed on the occupation of the premises *654 at a rental. This .again was a special agreement made with knowledge of the facts. Here the- court (Houghton, J.) stated (p. 705): ‘ ‘ .The: defendant having chosen to. bargain with the plaintiff to lease from her. the temporary and uncertain possession which the city might accord to her through inaction on its part, should be held to his bargain, and not having been disturbed in such occupancy by the city, he must pay the rent as agreed.”
The landlords further contend that condemnation of a part of the premises for public use does not amount to an eviction which would terminate the landlord-tenant relationship under the terms of the lease. ' Clause 21 of the lease reads: ‘1 That should the land whereon said building* stand or any part thereof be- condemned for public use, then in the event, upon the taking of the same for such public use, this lease, at the option of the Landlord, shall become null and void, and the term cease and come to an end upon the date when the same shall be taken and the rent shall be apportioned as of said date. No part of any award,- however, shall belong to the Tenant.” The landlords claim they had an option of terminating this lease but they did not exercise the option. The court would agree with the landlords’ contention if only a small portion of the premises were taken so that the tenant could reasonably conduct his drugstore business upon the remainder. But such is not the ease. The entire building has been condemned and the title to the entire building is vested in the State of New York. Since the taking was entire in this sense and not partial, there was no option left in the landlords. This clause 21 of the lease was interpreted recently in the Court of Claims in Behrer Holding Corp. v. State of New York (26 Misc 2d 388, 391-392) where the court (Del Giorno, J.) in considering an identical clause said: “ The appropriation was an entire taking, and, therefore, the part of paragraph 21 of the lease which reads: ‘ at the option of and Landlord ’, has no meaning whatever since there is nothing to ‘ opt ’ for. This clause, implying an act by the landlord if it wished to keep the lease alive, would apply only if there had been a partial taking of the leasehold by the State, which itself could be questioned by the tenant if the remainder were not reasonably usable.”
At the present time the only rights the landlords have with respect to this property is the reservation in Parcel 226, which is the rear portion of the premises, of the right and privilege of using the property providing the exercise of the right and privilege conferred does not interfere with the State’s rights. *655 This is little more than a limited right of access to the rear portion of the property which may be terminated by the State at any time.
It therefore does not appear that the landlords had any right to collect rent from the tenant during January, February and March, 1962.
Although the fifth allegation of the tenant’s first counterclaim allages “ That the State of New York now demands of the tenant that he pay rent to the State of New York, * * * for January, February, and March, 1962 ”, this was not proved upon the trial. However, this allegation would appear to be mere surplusage. This cause of action sounds essentially in money had and received. An action for money had and received lies for the recovery of money paid under a mistake of fact where the circumstances under which the money was paid are such as to authorize its recovery. (58 C. J. S., Money Received, p. 925; Hoyt v. Wright, 237 App. Div. 124; James v. Fink, 173 Misc. 730.)
The court concludes therefore that the landlords are not entitled to rents from the tenant for the period April, May and June, 1962, and that the petition of the landlords must be dismissed. Further, the tenant is entitled to a judgment against the landlords on the first counterclaim for $555 and on the second counterclaim for $300, for a total judgment of $855, with interest from May 9, 1962, and costs. Final order and judgment may be entered accordingly.