**UNITED STATES of America,
Plaintiff,**

**v.**

**CERTAIN INTERESTS IN PROPERTY
Situate IN the CITY OF WARWICK,
COMMONWEALTH OF VIRGINIA,
James River Apartments, Inc., a Corporation et al., Defendants and Counterclaimant,**

**and**

**Andre Evans, Intervenor-petitioner.**

**No. Misc. 590.**

United States District Court
E. D. Virginia,
Newport News Division.

Feb. 14, 1968.

Alfred D. Swersky, Asst. U. S. Atty., Norfolk, Va., for plaintiff.

Granger West, Newport News, Va., for defendants.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

The ultimate issue in this case involves the liability of a tenant, in a Wherry Housing Act project, for rent allegedly due a former holder of a leasehold interest for the one-month period following the filing of a complaint in condemnation and a declaration of taking, during which month the possession of the property remained in the former holder of the leasehold interest, James River Apartments, Inc., pursuant to court order. As hereinafter indicated, the Evans case, involving one tenant in the project, is a test case which will essentially resolve the status of other tenants similarly situated.

On October 1, 1957, the United States of America, plaintiff herein, filed a complaint in condemnation and a declaration of taking to acquire (a) all right, title, and interest of the James River Apartments, Inc., arising out of the lease dated 17 November 1952, bearing Contract No. DA–49–080–eng–998, between the Secretary of the Army, representing the United States of America, and the James River Apartments, Inc., a corporation organized and existing under and by virtue of the laws of the State of Maryland, together with all the tenements, hereditaments, appurtenances, apparatus, fixtures and equipment located on Parcel No. 1 and rights of ingress and egress thereto over certain routes described therein and being the property of said corporation; (b) all the right, title and interest granted by the Under Secretary of the Army to the James River Apartments, Inc., by instrument dated 17 November 1952, in that certain easement for right of way for a period not exceeding seventy-five years to construct, operate and maintain an open drainage ditch or storm water pipeline over, across, in and upon Parcel No. 2; subject to the interest of The First National Bank of Alexandria, Trustee, in a Deed of Trust dated January 1, 1953, executed by the James River Apartments, Inc., to The First National Bank of Alexandria, recorded on 9 January 1953, in the Clerk's Office of the City of Warwick, in Deed Book 7, page 528, the aforementioned Parcels Nos. 1 and 2 being more particularly described in said declaration of taking.

On October 1, 1957, an order of possession was entered herein granting to the United States of America the right of possession as of October 15, 1957, of the properties described in said declaration of taking.

On October 15, 1957, an amended order of possession was entered herein extending the date of possession of said property by the United States of America,

from October 15, 1957, to November 1, 1957. This amended order was entered at the request of James River Apartments, Inc., following the filing of a motion to dismiss.

The United States, as of October 1, 1957, assumed the obligation of payments on the loan secured by the aforementioned deed of trust, and did in fact begin its monthly payments on said loan with payment for the month of October 1957, said payment being made by Treasurer's Check No. 866,206 in the sum of $16,582.-27 to Federal National Mortgage Association, the noteholder under said deed of trust, same being forwarded to the noteholder by letter dated October 23, 1957.

Prior to the acquisition of title by the United States of America in this proceeding, the defendant, James River Apartments, Inc., had leased Wherry apartments under said leasehold to certain military personnel as provided in its lease and contract agreements with the United States.

Shortly before the first of October 1957, and prior to the taking, a directive was issued at Fort Eustis, Virginia, to military personnel occupying Wherry housing units, directing that none of the occupants of the Wherry apartments pay any further rental to the James River Apartments, Inc. Said tenants were further directed by the Commanding Officer of Fort Eustis to occupy said premises as quarters, and their quarters allowance for October was deducted in lieu of rent.

Prior to October 1, 1957, James River Apartments, Inc., had possession of the apartment project under lease with the Government. During the month of October 1957, James River Apartments, Inc., retained possession of the apartment project pursuant to the aforesaid orders of the Court. The evidence adduced in open Court proved that James River Apartments, Inc., maintained an office in the apartment project during the month of October 1957, and that James River Apartments, Inc., made payment of expenses of several thousand dollars incurred by it during the month of October 1957, for operation and maintenance of the apartment project during that month, including expense of rubbish or garbage removal and electrical charges for unoccupied apartments. The above expenditures also included payrolls for employees of James River Apartments, Inc., during the month of October 1957, engaged in the apartment project, as well as some items of maintenance of buildings and equipment. There has been no evidence that the Government did anything in operating and maintaining the apartment project during the month of October 1957, or that the Government incurred or paid any expense in connection therewith, other than the mortgage payment for that month.

Upon leasing apartments to said tenants, James River Apartments, Inc., had received from each of them the sum of $35.00 as a security deposit to insure the surrender of possession of each apartment unit occupied by each of said tenants, in good physical condition, and to insure the payment of rent by each such tenant.

Upon the acquisition by the United States of America of its leasehold in said apartments, defendant, James River Apartments, Inc., did not return to the individual tenants or the United States of America the $35.00 security deposits made to said corporation by each of said tenants.

When the United States caused to be filed the complaint and declaration of taking, it only paid into court the sum of $1.00 as the estimated just compensation for the leasehold so acquired. In fairness to the United States, as the exhibits will reveal, appraisers seeking to determine the just compensation were prohibited from entering the premises by the letters, words and actions of the principal officer of James River Apartments, Inc. At a hearing conducted on November 1, 1957, pursuant to the motion to dismiss filed by James River Apartments at which time the "good faith" of the taking was at issue, the United States Attorney received a telegram from the

office of the Secretary of Army indicating the willingness of the United States to pay into court the additional sum of $181,999.00, which amount was subsequently paid on November 8, 1957, with the result that the entire sum of $182,000.00 was withdrawn by James River Apartments, Inc., pursuant to order entered on December 23, 1957.

The receipt of the telegram during the hearing on November 1, 1957, rendered moot the motion to dismiss. However, the transcript reveals that, in a discussion with counsel, the issue of rents for October 1957 was in the minds of counsel in looking forward to adjusting the many details.[1] *No request was thereafter made to the Court for any order adjusting the rents and expenses as authorized by 40 U.S.C.A., section 258a.*

Many months elapsed. Illness of counsel, substitution of Government counsel, docket congestion, inability to adequately prepare for trial; these factors all contributed to the delays. The case was set for trial, and reset for trial, on several occasions. Finally, as another trial date approached, a settlement was reached. On January 20, 1964, pursuant to a stipulation, a judgment was entered fixing the just compensation for the taking, including any and all damages by virtue thereof, in the sum of $607,500.00. The judgment provided that, upon payment, the same would be in full settlement and satisfaction of all claims or interest in and to the parcels of land that James River Apartments owned or might be entitled to at the time of the filing of the declaration of taking *"as against the plaintiff* [United States of America]." The sum of $425,500.00, representing the

difference between $182,000.00 and $607,500.00, was thereafter paid to James River Apartments by order dated February 28, 1964.

On this latter date, February 28, 1964, defendant, James River Apartments, Inc., deposited into the registry of the Court to the credit of this proceeding, the total sum of $12,250.00, said sum representing the total amount of security deposits made by the tenants named in the petition of James River Apartments, Inc., for deposit and distribution of such sum, filed herein on the same day. The defendant, James River Apartments, Inc., does not contend that any security deposit should be forfeited by reason of the physical condition of any apartment.

On February 28, 1964, an order was entered herein directing that the persons named in Exhibit A attached to said petition be made parties defendant to said petition with leave to assert such claim as each may have against James River Apartments, Inc., for refund of security deposits from the sum of $12,250.00 so deposited with the Court, and with leave to James River Apartments, Inc., to assert any claim it may allegedly have against such parties defendant and each of them for unpaid rent. The defendant does not contend that any accrued rent was due for any apartment prior to the month of October 1957.

Pursuant to further provisions of said order of February 28, 1964, the plaintiff, United States of America, by the Department of the Army and the United States Attorney, obtained from approximately 250 of said parties defendant, executed petitions for payment of security deposits, and said executed petitions are now

---

1. The statement of counsel (Mr. Ford) for James River Apartments, Inc., is as follows:

"For instance, the rent for October, which I am sure I don't know where it lies, the obligation; and the cost of expenses up to that time, which we discussed. We should put those in the stipulation; that they are matters we would consider. Failing to reach an agreement, we will report to the Court and the Court will decide it.

"(The Court) It was my understanding from the conversation with counsel prior to the recess that in the event you gentlemen could not stipulate with respect to who may be entitled to the rentals during the month of October and who may be obligated to pay the mortgage payment and who may be obligated to pay the operating expenses, that would be left to the judgment of the Court finally."

in the custody of the United States Attorney at Norfolk, Virginia, pending directions from the Court to file the same.

On January 8, 1965, the Petition for Payment of Security Deposit of Andre Evans, one of the former tenants, was filed herein, and it was requested that an order be entered herein directing payment to him of the sum of $35.00 from the funds heretofore deposited with the Court by James River Apartments, Inc.

On February 18, 1965, Answer and Counterclaim of James River Apartments, Inc., was filed herein wherein the said James River Apartments, Inc., asserted that the said Andre Evans owes the said James River Apartments, Inc., for unpaid rent in the sum of $72.70 for the month of October 1957, arising out of petitioner's possession as tenant of one of the apartments leased to it by James River Apartments, Inc., and demanded judgment against the said Andre Evans for the sum of $72.70 and costs. This counterclaim was denied by answer filed by Andre Evans on March 2, 1965.

It was stipulated by counsel that if Andre Evans were present at the trial, he would testify as follows:

1. That prior to October 1, 1957, Andre Evans and others occupied as tenants and lessees of James River Apartments, Inc., certain apartments in the apartment project.

2. That Andre Evans continued to occupy an apartment in said apartment project during the month of October 1957 and never gave any notice to James River Apartments, Inc., of termination of his existing tenancy or of his intention to vacate his apartment at any time; nor did he receive any notice from James River Apartments, Inc., terminating his previously existing tenancy.

3. That the monthly rental of the apartment occupied by Andre Evans was $72.70.

4. That Andre Evans has not paid to James River Apartments, Inc., any rent for the month of October 1957.

From the foregoing, it is crystal clear that, as between the condemnor and condemnee, all issues have been fully settled and adjudicated. This is not now a matter where terms of the order of possession may be belatedly fixed under 40 U.S.C.A., section 258a. We do not mean to suggest that, as between the condemnor and condemnee, an order could not have been entered at a time subsequent to November 1, 1957—at which time the Government took actual possession of the entire property so condemned—but in the teeth of the complete and final settlement, it is too late to seek relief under section 258a. At any time prior to the entry of the agreed judgment order, the court would have had the power to fix terms, including rent adjustments and expenses, as a condition to the right of possession.

James River Apartments relies, in the main, upon United States v. Certain Interests in Property, etc., 302 F.2d 201 (2 Cir., 1962). There is dicta in this opinion which supports the argument of counsel for defendant, James River Apartments. In that case, a condemnation proceeding involving a Wherry Act project, the declaration of taking was filed on December 15, 1960, with an *ex parte* order being entered granting possession to the Government as of February 1, 1961. No terms for continuing in possession were fixed by the court order. Months after the possession became effective the Government moved for an order requiring the condemnee to account for the period during which the condemnee remained in possession. In reversing and remanding the Second Circuit said:

"We hold that the United States has a valid claim for rental value of the premises during this period [i. e., the period during which the condemnee remained in possession pursuant to court order], rather than an accounting of moneys received as agent, and reverse and remand for determination of such rental value."

The Court went on to hold that, under section 258a, terms should *"now* be fixed with due regard to the parties' relation-

ship to the premises during the period from termination of the lease to the surrender of possession." Thus, it appears that (1) the leasehold was terminated by law as of the date of taking, (2) even though the *ex parte* order of possession did not specify the terms upon which possession should be surrendered, the court has power under 40 U.S.C.A., section 258a to thereafter impose such terms as between the condemnor and condemnee, and (3) a condemnee legally in possession after the termination of the lease by the filing of the declaration of taking may continue the subrental and management of the premises during the period of legal possession, subject to a duty to pay to the Government the reasonable value of the tenancy for the period in question under 40 U.S.C.A., section 258a.[2] While the language of the opinion intimates that the condemnee "had a right to continue their subrental," we do not agree with the interpretation placed thereon by counsel for James River Apartments. We think that the words "right to continue their subrental" must be read in light of 40 U.S.C.A., section 258a, thus restricting the continuance of any subrental existing as of the date of taking to the rights of the condemnor and condemnee *inter sese*. We do not interpret the opinion as continuing the legal relationship of landlord and tenant as between the condemnee and Andre Evans, et als.

While there were subsequent amendments to the declaration of taking, these amendments did not convert an original partial taking into a taking of the entire project.[3] Where rights of parties are vested under the original declaration, subsequent amendments to the declaration of taking do not affect these rights. 6 Nichols, Eminent Domain, section 27.25(1), p. 523.

James River Apartments also rely upon W. M. McDonald Co. v. Hawkins, 287 Mass. 71, 191 N.E. 405 (1934), and Goldstein v. Stadler's Shoes, 159 Misc. 804, 288 N.Y.S. 793 (1936). These authorities are inapposite. As pointed out in Lodge v. Columbia Packing Co., 162 F.Supp. 483 (D.Mass., 1958), the *W. M. McDonald Co.* case involved only a *partial* taking which does not terminate the liability for rent. In *Goldstein*, the rent had been paid three months in advance and the lessee was attempting to get a rebate which was summarily disallowed. Of course, *Goldstein* did not pertain to a federal taking and, while it may be arguable in support of the claim of James River Apartments, it is clearly distinguishable from the case at hand in its factual context. Moreover, in a later New York case, Lentino v. Maltese, 34 Misc.2d 650, 229 N.Y.S.2d 1011 (1962), the court held that a taking of the whole premises terminated the lessee's liability for rent to the lessor and, citing from Lodge v. Martin, 31 App.Div. 13, 14, 52 N.Y.S. 385, 386, said:

"There would be neither justice nor reason in a rule which would permit a party to collect rent for the use and occupation of lands which he does not own. When, therefore, as here, the estate of the landlord in the whole of the demised premises, as well as that of the tenant, has been extinguished by condemnation proceedings institut-

2. The cited case reached the Court of Appeals for the Second Circuit on a subsequent date. See: 326 F.2d 109 (2 Cir., 1964). In footnote 1 at 326 F.2d 112, the Court refers to the prior appeal by saying that "this court held that the United States was entitled to the rental value of the premises from the date of taking, when title vested in the government, to the date when the government was awarded possession." Thereafter, following remand of the prior appeal, it appears that the government was awarded rentals of $14,502 against Dayton Development and $42,616 against Fort Hamilton Manor.

3. The first amendment related to the payment into court of the increased estimated just compensation. The second amendment was filed to include the master antenna system and to add the owner of that system as a party to the proceeding, at which time an additional sum was paid into court to provide estimated just compensation for the master antenna system.

ed \* \* \* before the rent sued for accrued, it must be held that the right of the landlord, on the one hand, to collect, and the liability, on the other, of the tenant, to pay, ceased the moment that the title of the land passed to the city."

 The weight of authority supports the view advanced by the condemnor and intervenor-petitioner that the estate of the landlord (in this case the leasehold owner), as well as that of the tenant, is extinguished by the filing of the declaration of taking wherever the entire premises are taken. Corrigan v. City of Chicago, 144 Ill. 537, 33 N.E. 746, 21 L.R.A. 212 (1893); Leonard v. Autocar Sales & Service Co., 392 Ill. 182, 64 N.E.2d 477, 163 A.L.R. 670 (1945); City of Pasadena v. Porter, 201 Cal. 381, 257 P. 526, 53 A.L.R. 679 (1927), 53 A.L.R. 679, 683; See: 26 Am.Jur.(2d), section 79, p. 737; 32 Am.Jur., section 824, p. 701. Cf. Duckett & Co. v. United States, 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216.

As aptly stated in 2 Nichols, Eminent Domain, section 5.23(3), p. 70:

"[I]t is much the better rule and more practical rule to allow a taking of the entire property to operate as a termination of the obligation to pay rent and to assess the damages accordingly, even if it is not easy to justify this practice upon strict legal theory."

As the final judgment and settlement between the condemnor and condemnee precludes the right and power of this Court to make an *inter sese* adjustment under 40 U.S.C.A., section 258a, and as it seems clear that the lease between James River Apartments and Andre Evans was abrogated on October 1, 1957, the counterclaim for rent allegedly due by Evans to James River Apartments for the month of October 1957, must fail. Since James River Apartments concedes that it has no right or claim to the security deposit in the sum of $35.00 made by Evans, unless Evans owes rent to James River Apartments for October 1957, a judgment will be entered in favor of Evans against James River Apartments,

Inc., the same to be satisfied out of the funds heretofore deposited to the registry of the court.

A judgment order will be entered upon presentation. If an appeal is noted within the time proscribed by law, no further action will be taken with respect to the $12,250.00 deposited by James River Apartments, Inc., pursuant to the order entered on February 28, 1964, pending the outcome of the appeal. If no appeal is to be taken, counsel for the United States of America shall proceed further with respect to the orderly distribution of the balance of said sum.